Jenean McBREARTY, Appellant

v.

KENTUCKY COMMUNITY AND
TECHNICAL COLLEGE
SYSTEM, Appellee.

No. 2006–CA–002621–MR.

Court of Appeals of Kentucky.

Aug. 22, 2008.

Jenean McBrearty, Lexington, KY, pro se.

James D. Cockrum, Griffin Terry Sumner, William F. Becker, Louisville, KY, for appellee.

Before CAPERTON, LAMBERT, and THOMPSON, Judges.

## OPINION

CAPERTON, Judge.

Jenean McBrearty (McBrearty) appeals the dismissal of all pending claims by McBrearty against Kentucky Community and Technical College Systems (KCTCS)[1] by the Honorable James Ishmael, Jr., Judge, of the Fayette County Circuit Court. Finding no error, we affirm.

The facts of the case are undisputed. McBrearty signed an eleven-month tenure-track teaching contract with KCTCS with an express term of August 1, 2005, through June 30, 2006. Professor Hossein Motamedi (Motamedi), a colleague, emailed McBrearty and requested that she include an opinion poll in her upcoming course. McBrearty declined. In the following few months, McBrearty would continually refuse to include the poll which resulted in a personality conflict with Motamedi. Multiple discussions about the poll occurred in the first few months of McBrearty's employment. In September 2005, McBrearty delivered a memo to Dean Sandra Carey and President Jim Kerley. In this memo she complained about numerous coworkers,[2] including the multiple discussions over the poll, demanded that "this institution stop harassing me," and said she considered the continuing harassment a hostile work environment.

McBrearty learned that KCTCS would not renew her teaching contract in Decem-

1. In the original complaint McBrearty filed suit against multiple defendants but failed to name them in the resulting appeal, using instead the designation of *et al.* This Court ruled in its order of April 17, 2007, that the individual defendants were not parties to this appeal due to the designation of *et al.* The order of September 18, 2007, left the decision of whether the parties are indispensable parties to this panel and, as such, will be addressed in this opinion.

2. The coworkers were all male.

ber 2005. McBrearty sought the appeal process offered by the KCTCS Senate Advisory Committee on Appeals and claimed that her complaints against coworkers were complaints for discrimination and, thus, the non-renewal of her contract constituted retaliation and illegal behavior. After reviewing the documents presented and interviewing multiple colleagues, the Senate Advisory Committee upheld the non-renewal of McBrearty's contract on February 24, 2006.

In protest of the non-renewal of her contract, McBrearty posted two cartoons on the entry way to her office suite in January 2006. These cartoons faced the public hallway. One depicted McBrearty with a crutch [3] under the words "Bluegrass College Firing the Handicapped." The other cartoon depicted two figures dressed in hooded robes [4] with the labels of "Kerley" [5] and the "HLSS Dept."

McBrearty went to work on January 18, 2006,[6] to find that the cartoons had been removed. Claiming to fear for her safety, she flagged down a KCTCS security officer, which in turn contacted the University of Kentucky Police. Upon entering the office, McBrearty found a note written by Dean Carey, stating that she had "removed the inappropriate and unacceptable signs from your door. Please refrain from displaying inappropriate and/or unacceptable signs in a public space." McBrearty filed a complaint with the officer and the officer issued a uniform citation for "theft by unlawful taking" against Dean Carey; no further action was taken on the matter.

Shortly thereafter, on Monday, January 23, 2006, President Kerley asked to meet with McBrearty. During this meeting McBrearty was asked to resign. Upon refusal, McBrearty was told to pack up her things and not to return to campus. By letter dated January 25, 2006, KCTCS notified McBrearty that she had been put on paid administrative leave, with full benefits, up to the contract term expiration date.

On February 2, 2006, McBrearty filed a charge with the Equal Employment Opportunity Commission (EEOC), claiming sex discrimination, disability discrimination, retaliation in violation of the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964. On April 7, 2006, the EEOC determined that McBrearty's complaint and the information provided did not result in any violation of statute.

On May 26, 2006, McBrearty filed a 94–paragraph complaint alleging both twelve (12) [7] causes of action against KCTCS and

---

**3.** At this point in time McBrearty had sustained an exercise-related injury and was walking with a crutch.

**4.** KCTCS maintains that the depiction is that of the Ku Klux Klan. McBrearty, at the hearing held by the Fayette Circuit Court, indicated that the depictions might be Harry Potter characters.

**5.** President Kerley of KCTCS.

**6.** This would be immediately following the Martin Luther King, Jr. Holiday.

**7.** Count I—Retaliation for exercise of Constitutionally Protected right to report sexual harassment; Count II—Interference with and retaliation for exercise of freedom of speech; Count III—Retaliation for reporting a crime against property; Count IV—Invasion of privacy; Count V—Disparate treatment; Count VI—Libel and Slander; Count VII—Negligent Supervision; Count VIII—Wrongful termination of tenure-track employment; Count IX—Tortious Interference with prospective employers; Count X—Denial of Due Process; Count XI—Intential infliction of emotional distress; Count XII—Retaliation for whistle blowing. The Court notes that the complaint actually numbered fourteen (14) counts of which two (2) were misnumbered. In the brief before this Court McBrearty fails to address invasion of privacy, libel and slander, negligent supervision, wrongful termination

five (5) against KCTCS employees.[8] On September 18, 2006, each defendant timely filed a Kentucky Rules of Civil Procedure (CR) 12.02 motion to dismiss and attached eleven (11) exhibits in support of their motions. McBrearty opposed the motion and filed a cross-motion for summary judgment wherein she attached twenty-six (26) exhibits. After holding three hours of oral argument on November 29, 2006, the trial court dismissed all pending claims.

On December 21, 2006, McBrearty filed a Notice of Appeal wherein she identified the appellee as Kentucky Community and Technical College System, *et al.* On February 9, 2007, KCTCS and each individual defendant moved to dismiss the appeal. This Court ruled in its order of April 17, 2007, that the individual defendants were not parties to this appeal due to the designation of *et al.* That order left the decision of whether the parties are indispensable parties to this panel.

█ KCTCS argues that the failure to join the individual defendants mandates a dismissal of the appeal as the individual defendants are indispensable parties. Their argument is based on the complaint, with each count listing not only KCTCS but also an individual defendant. Further, the individual defendants were sued in their individual and official capacities. KCTCS points out that all wrong doing complained of by McBrearty was always by an individual defendant. KCTCS argues that allowing the appeal to go forward might result in inconsistent obligations between KCTCS and each individual defendant, in that regardless whether affirmed or remanded, only KCTCS would be bound.

McBrearty argues that the parties are not indispensable as KCTCS's insurer would ultimately be liable for any damages. McBrearty also argues that such a small thing as adding names should not be a reason to dismiss an appeal, especially given that she is pro se. She cites to *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) for support that pro se litigants should be held to less stringent standards in formal *pleadings* than those drafted by a lawyer. McBrearty argues this "lesser standard" gives this court the basis to grant her cross-motion to vacate the order denying appellant leave to amend pre-hearing statement and to join the individual defendants in the appeal.

█ McBrearty's reliance on *Haines* is misplaced. We require pro se litigants to follow the Kentucky Rules of Civil Procedure. "It is well-established that failure to name an indispensable party in the notice of appeal results in dismissal of the appeal." *Slone v. Casey,* 194 S.W.3d 336, 337 (Ky.App.2006) citing to *City of Devondale v. Stallings,* 795 S.W.2d 954 (Ky. 1990); CR 19.02. The failure to name an indispensable party in the notice of appeal is more complex than a simple adding of the names; this is considered a jurisdictional defect. *See City of Devondale,* 795 S.W.2d at 957.[9] It is a simple maxim of the

---

of tenure-track employment, tortious interference with prospective employers, denial of due process, intentional infliction of emotional distress, and retaliation for whistle blowing. Under *Milby v. Mears,* 580 S.W.2d 724 (Ky.App.1979), we uphold the trial court's determination of those issues that were not briefed on appeal.

8. Defendants included Jim Kerley, Sandra Carey, Greg Feeney, Charlene Walker, and Lewis Prewitt, in addition to KCTCS. Defendants filed for removal to federal court. As McBrearty explicitly sued under Kentucky law, the federal court remanded back to the Fayette Circuit Court.

9. CR 73.03(1) provides that a "notice of appeal shall specify by name all appellants and

law that without jurisdiction, a court cannot proceed. For purposes of appeal, a person is a necessary party if the person would be a necessary party for further proceedings in the circuit court if the judgment were reversed. *Land v. Salem Bank*, 279 Ky. 449, 130 S.W.2d 818 (1939); *Hammond v. Department for Human Resources*, 652 S.W.2d 91 (Ky.App.1983). We agree with KCTCS that the individual defendants are indispensable parties, as a remand back to the trial court could result in inconsistent obligations by either KCTCS or the individual defendants to McBrearty. While the failure by McBrearty to join the individual defendants, taken alone, is sufficient to dismiss this appeal, we shall nevertheless continue and address the arguments made by McBrearty.

We turn to the merits of the appeal. McBrearty argues that the granting of defendants' motion to dismiss was error. KCTCS argues that the trial court properly granted the motion to dismiss.

When presented a CR 12.02 motion to dismiss the court must take every well-pleaded allegation of the complaint as true and construe it in the light most favorable to the opposing party. *Gall v. Scroggy*, 725 S.W.2d 867 (Ky.App.1987). As such, "[t]he court should not grant the motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Pari–Mutuel Clerks' Union of Kentucky, Local 541, SEIU, AFL–CIO v. Kentucky Jockey Club*, 551 S.W.2d 801 (Ky.1977).

If the trial court considered matters outside the pleadings, the motion to dismiss will be treated as one for summary judgment. CR 12.02. In the case sub judice, the court clearly considered matters outside the pleadings. Therefore, our review will be that of the granting of a summary judgment.

The standard of review on appeal of a summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). Since summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue de novo. *Lewis v. B & R Corporation*, 56 S.W.3d 432, 436 (Ky.App.2001).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CR 56.03. The trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991). Thus, summary judgment is proper only "where the movant

---

all appellees." However, an appeal does not "lie against one who was not a party to the proceedings in which the judgment was rendered." *White v. England*, 348 S.W.2d 936, 937 (Ky.1961). "A notice of appeal, when filed, transfers jurisdiction of the case from the circuit court to the appellate court. It places the named parties in the jurisdiction of the appellate court ... Therefore, the notice of appeal transfer[s] jurisdiction to the Court of Appeals of only the named parties." *City of Devondale v. Stallings*, 795 S.W.2d 954, 957 (Ky.1990). If an appellant fails to name an indispensable party to an appeal, dismissal of the appeal is the appropriate action. *Id.*

shows that the adverse party could not prevail under any circumstances." *Id.*

However, "a party opposing a properly supported summary judgment motion cannot defeat that motion without presenting at least some affirmative evidence demonstrating that there is a genuine issue of material fact requiring trial." *Hubble v. Johnson,* 841 S.W.2d 169, 171 (Ky.1992), citing *Steelvest, supra. See also O'Bryan v. Cave,* 202 S.W.3d 585, 587 (Ky. 2006); *Hallahan v. The Courier Journal,* 138 S.W.3d 699, 705 (Ky.App.2004). The trial court's focus should be on what is of record rather than what might be presented at trial. *Welch v. American Publishing Co. of Kentucky,* 3 S.W.3d 724 (Ky.1999). However, "[t]he hope or bare belief ... that something will 'turn up,' cannot be made [the] basis for showing that a genuine issue as to a material fact exists." *Neal v. Welker,* 426 S.W.2d 476, 479–480 (Ky.1968).[10]

On appeal McBrearty argues three principle points. One, that she offered direct and indirect evidence of a prima facie case of retaliation and an adverse action, and that the circuit court erred when it ruled she could not show a causal connection between the adverse action and her complaints. In addition to this point she argues that the court erred in ruling that the non-renewal of her contract was not an adverse action. Out of the four retaliation counts, McBrearty chooses to address only two, those of the exercise of free speech and of the constitutional right to report sexual harassment.

KCTCS points out that McBrearty's claim of retaliation for reporting sexual harassment must fail as a matter of law. First, there is no "Constitutional" right to report sexual harassment. Claims of retaliation are solely creatures of statute and in Kentucky, they are under KRS 344.280. *See Grzyb v. Evans,* 700 S.W.2d 399 (Ky.1985).

To succeed in a retaliation claim plaintiff must establish a prima facie case of retaliation. The prima facie case has three elements. "The plaintiff, in making out a prima facie case, must show that 1) she engaged in a protected activity, 2) she was disadvantaged by an act of her employer, and 3) there was a causal connection between the activity engaged in and the employer's act." *Kentucky Center for the Arts v. Handley,* 827 S.W.2d 697, 701 (Ky.App.1991).

McBrearty claims that she has established element one in a prima facie case by introducing her complaints directed to the university and her co-workers actions. However, the first time that McBrearty alleges sexual harassment is mentioned after the claimed adverse action of the non-renewal of the contract. The complaints to KCTCS do not mention workplace events which reasonably suggest severe or pervasive harassment on the basis of sex capable of creating an objectively hostile work environment. *See Clark County School District v. Breeden,* 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) and *Meyers v. Chapman Printing Co.,* 840 S.W.2d 814 (Ky.1992).

McBrearty also argues that she has established element three in her prima facie case. The trial judge correctly deter-

---

**10.** McBrearty claims that she was denied a right to discovery, yet the evidence in the record outside the pleadings is substantial. Further, the defendants claim that they complied with all discovery requests by McBrearty. When asked by the court what further discovery was needed, McBrearty failed to illuminate the court as to any relevant discovery. Therefore, we find no merit to McBrearty's claim that she was denied a right to discovery.

mined that the contract contained an express termination date, which was plain and unambiguous, and the contract would naturally expire based upon the term. "When no ambiguity exists in the contract, we look only as far as the four corners of the document to determine the parties' intentions." *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer District,* 174 S.W.3d 440, 448 (Ky.2005). By putting McBrearty on paid administrative leave with benefits, the trial court correctly determined that the contract had not been breached and thus no adverse action occurred because of the paid leave. The trial court correctly ruled that McBrearty's claim of an adverse action of the non-renewal of her contract, likewise failed. Given the record, the decision not to renew the contract, while close in time to McBrearty's complaints to KCTCS, fails to show the causal connection. *See EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir.1997) and *Moon v. Transport Drivers, Inc.,* 836 F.2d 226 (6th Cir.1987).[11] We find no error in the trial court's conclusion that this "retaliation claim" could not prevail under any

circumstances, making the motion to dismiss properly granted.

■■■■ McBrearty also presents a retaliation claim for exercising her freedom of speech by posting two cartoons facing the public hallway.[12] KCTCS claims that the cartoons were defamatory and, thus, not constitutionally protected; therefore, there can be no retaliation.

■■■■ KCTCS is correct that defamation is not protected under our Constitution.[13] *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). Four elements are necessary to establish a defamation action, whether for slander or libel, to wit: (1) defamatory language; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation. *Columbia Sussex Corp., Inc. v. Hay,* 627 S.W.2d 270, 273 (Ky.App. 1981). Defamatory actions which imply that the plaintiff committed crimes have been held to be actionable. *See Digest Publishing Company v. Perry Publishing Comp any,* 284 S.W.2d 832, 834 (Ky.1955), and *Stringer v. Wal–Mart Stores, Inc.,* 151 S.W.3d 781 (Ky.2004). Further, membership in the Ku Klux Klan tends to harm a

---

**11.** Kentucky Courts consider the decisions of federal courts that interpret Title VII as persuasive precedent when interpreting KRS Ch. 44 due to the similarity between Title VII of the Civil Rights Act of 1964 and Kentucky's Civil Rights Act. *Bank One v. Murphy,* 52 S.W.3d 540 (Ky.2001).

**12.** McBrearty on appeal argues that being placed on administrative leave constituted an adverse action after the posting of the cartoons. Our review of the record indicates that McBrearty argued to the trial court that the adverse action in her case was that of non-renewal of her contract, which occurred before the posting of the cartoons. The trial court relied on the timing issue of the non-renewal. Failure to raise an issue to the trial court precludes consideration of such issue on appeal. *See Hyde v. Haunost,* 530 S.W.2d 374 (Ky.1975) and *Abuzant v. Shelter Ins. Co.,*

977 S.W.2d 259 (Ky.App.1998). Without citation to the record, we assume that the evidence supports the findings of the court. *See McDaniel v. Garrett,* 661 S.W.2d 789 (Ky.App. 1983) and *Whicker v. Whicker,* 711 S.W.2d 857 (Ky.App.1986). Further, if McBrearty believed that the adverse action associated with her being placed on administrative gave rise to essential factual findings, then it was incumbent upon McBrearty to make a motion for additional findings of fact before trial court. Failure to bring such omission to attention of trial court by means of written request would be fatal to an appeal. *Vinson v. Sorrell,* 136 S.W.3d 465 (Ky.2004).

**13.** "It is Kentucky law, consonant with the federal First Amendment, which governs the right to recover for defamation." *Ball v. E.W. Scripps Co.,* 801 S.W.2d 684 (Ky.1990).

person's reputation in the community. *See* RESTATEMENT (SECOND) OF TORTS § 559 (1977); *Ball v. E.W. Scripps Co.,* 801 S.W.2d 684, 688 (Ky.1990) (applying § 559); *McCall v. Courier–Journal and Louisville Times Co.,* 623 S.W.2d 882, 884 (Ky.1981)("[A] writing is defamatory if it tends to (1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or (3) injure him in his business or occupation."). *See also Joint Anti–Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951) citing to the Restatement, Torts, § 559 for the illustration that defamation occurs when a person is suggested to be a member of the KKK. Given the jurisprudence on defamation we find no error in the court granting the motion to dismiss.

■ McBrearty's second argument presented to this Court is that she offered admissible direct and indirect evidence of a prima facie case of disparate treatment and the circuit court erred when it ruled that she did not show that males similarly situated were treated better.

■ A claim for disparate treatment requires the plaintiff to show "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Peltier v. U.S.,* 388 F.3d 984, 987 (6th Cir.2004). *See also Tiller v. University of Kentucky,* 55 S.W.3d 846 (Ky.App.2001) and *Pierce v.*

*Commonwealth Life Ins. Co.,* 40 F.3d 796 (6th Cir.1994). Kentucky courts apply the McDonnell Douglas framework to discrimination cases brought under state law. *See Kentucky Ctr. for the Arts v. Handley,* 827 S.W.2d 697, 699 (Ky.App.1991). In order to show that a plaintiff is "similarly situated" to another, the plaintiff is required to prove that all of the relevant aspects of their employment situation were "nearly identical" to those of the "similarly situated" employee. *See Pierce,* 40 F.3d 796.

McBrearty offered two male professors as those that were similarly situated. Professor Robert Hinkle (Hinkle) allegedly had disagreements with Motamedi, yet had his contract renewed. Professor Steve White (White) allegedly posted an offensive cartoon, was asked to remove it, and suffered no adverse action. KCTCS argued that Hinkle was not similarly situated, in that Hinkle sought out Motamedi and apologized after their altercation. Further, the disagreement between Hinkle and Motamedi did not occur within the first few months of Hinkle being hired. KCTCS also argues that the alleged "different treatment" between White's cartoon and McBrearty's cartoon is not true, in that the policy was enforced against both offensive cartoons, i.e. removal, with only the circumstances being different.[14] Given this, we do not find error in granting the motion to dismiss.

McBrearty's third argument is that "the circuit court made conflicting rulings in similar cases; what is the standard of evidence for Appellant?"[15] McBrearty also claims that Judge James Ishmael badgered, mocked, and trivialized her, and was

14. KCTCS claims that the circumstances in the facts surrounding the removal are different due to timing. McBrearty's cartoon was removed over a weekend and, thus, no request could be made. White's cartoon was removed during the course of a work week;

an appropriate time for the request for removal.

15. As previously discussed, the standard of proof, referred to by McBrearty as "evidence," is the same for all plaintiffs and does not change from plaintiff to plaintiff.

prejudiced against her at the hearing on the motion to dismiss. She claims to have been put on trial and required to cite cases, law, and statute. After a careful review of the three hour hearing, we find these allegations are both a distortion and contortion of the court's actions McBrearty knew opposing counsel's citation to statute prior to the hearing by virtue of the well briefed motion. A hearing on a motion to dismiss based on such a voluminous record could and did, in this case, result in lengthy oral arguments. Judge Ishmael was courteous, patient, and well informed of the voluminous record before ruling. It is not relevant that Judge Ishmael denied a motion to dismiss in a different case. As such, there is no error.

Based on the aforementioned reasons, we find no error in the grant of defendants' motion to dismiss by the Fayette Circuit Court, the Honorable James Ishmael, Judge, presiding, and therefore, affirm.

ALL CONCUR.