Prentice WALKER, Appellant

v.

COMMONWEALTH of Kentucky, Kentucky Educational Television, Appellee

NO. 2014–CA–000883–MR

Court of Appeals of Kentucky.

APRIL 8, 2016; 10:00 A.M.

Discretionary Review Denied by Supreme Court December 8, 2016

Brief for Appellant: Garry R. Adams, Daniel J. Canon, Louisville, Kentucky.

Brief for Appellee: Debra H. Dawahare, Sharon L. Gold, Lexington, Kentucky.

BEFORE: MAZE, STUMBO, AND TAYLOR, JUDGES

## OPINION

MAZE, JUDGE:

Prentice Walker, an employee of Kentucky Educational Television (KET), appeals from two orders of the Fayette Circuit Court which combined to grant full summary judgment in favor of KET on Walker's allegations of employment discrimination and retaliation on the basis of his race. Walker contends that neither the applicable statute of limitations nor the doctrine of election of remedies bars any of his claims, even those arising from events which occurred prior to the five-year statute of limitations period. He further contends that genuine issues of material fact remain concerning his claims of discrimination and retaliation through a failure to promote.

Though we disagree with the trial court's reasoning on one minor point, we observe no error in its ultimate conclusion that KET was entitled to judgment as a matter of law on all of Walker's claims. Hence, we affirm.

### Background

Prentice Walker holds a bachelor's degree in Telecommunications from the University of Kentucky. Prior to gaining employment with KET in 1987, Walker worked with WKYT–TV in Lexington. Following reorganization in 1995, KET named Walker its video crew chief, a supervisory position he held until 2001 when he applied, but was not hired, for the newly created position of Production Manager. Tom Bickel, a white applicant, received the position. Creation of the Production Manager resulted in a loss of supervisory duties and privileges for both Walker and the video crew chief, Doug Collins. Based upon this, in February 2002, Walker filed a race discrimination charge with the Lexington–Fayette County Urban Human Rights Commission (hereinafter "HRC"). Following an investigation, the HRC found no probable cause to support Walker's claim and issued a Right to Sue Letter on November 5, 2003.

On December 24, 2008, Walker filed this action against KET and the KET Foundation[1] alleging racial discrimination and retaliation in violation of the Kentucky Civil Rights Act (KCRA). Walker alleged a "continuous and persistent" pattern of disparate treatment from his hiring in 1987 through the filing of the complaint, evidenced by the denial of promotions and his 2001 demotion despite possessing superior qualifications. In support of this claim, Walker's complaint cited incidents from or around 1989, 1990, 2001, 2004, 2005, and 2008. These included the 2001 employment decision that was the basis for Walker's HRC complaint. Walker's suit further alleged that KET "blackballed" him following his reports to management and his complaint to the HRC of ongoing racial discrimination.

In a November 27, 2012 order, the trial court granted partial summary judgment on those claims based upon events predating December 24, 2003, because they fell outside the applicable statute of limitations, KRS[2] 413.120(2). The court also found the same claims to be barred under the doctrine of election of remedies, as they "were or could have been included" in Walker's HRC complaint.

KET renewed its motion for summary judgment on Walker's remaining claims, and on May 13, 2014, the trial court en-

---

1. Walker later voluntarily dismissed the KET Foundation as a defendant, and that organization is not currently before this Court.

2. Kentucky Revised Statutes.

tered an order sustaining the motion in its entirety. The trial court held that Walker's claims of discrimination and disparate treatment were based exclusively on "the subjective beliefs" of Walker and other African–American KET employees. According to the trial court, this was insufficient to meet Walker's burden. Similarly, the trial court found that Walker's claim of retaliation lacked factual support and was insufficient to survive summary judgment. Walker now appeals from both orders. We will provide additional facts as they become necessary to our analysis.

## Summary Judgment Standard and Standard of Review

We review the trial court's orders under Kentucky's well-established summary judgment standard. Therefore, it is our task to determine whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). A movant "must convince the court, by the evidence of record, of the nonexistence" of such issues. *Steelvest, Inc. v. Scansteel Serv. Ctr.*, 807 S.W.2d 476, 482 (Ky.1991). Like the trial court, we must view the record "in a light most favorable to the party opposing the motion for summary judgments and all doubts are to be resolved in his favor." *Id.* at 480; *see also Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky.1984).

> However, where the conflict is between inferences to be drawn from undisputed facts, summary judgment may be granted when it is clear that the only reasonable inference is in favor of the moving party. Once it has been established that the evidentiary facts are genuinely undisputed, the movant must establish his

right to a judgment as a matter of law. Where the claims have no substance or the controlling facts are not in dispute, summary judgment is proper.

*Harker* at 229. Finally, as this analysis exclusively involves questions of law, our review is *de novo*. *See Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky.App.2000).

## Analysis

### I. Walker's Compliance with CR [3] 76.12

We first address an issue KET raises on appeal: that Walker's Statement of the Facts is almost entirely devoid of precise citations to the record as required under CR 76.12(4)(c). KET contends that we should not consider assertions for which Walker failed to provide such a citation. After careful consideration of Walker's chosen method of citation on appeal, we ultimately decline to disregard his arguments on the complex and important issues he raises.

CR 76.12(4)(c) requires a party's "ample" citation to the record in his Statement of the Facts and Argument. Walker's twenty-plus-page Argument contains two citations to the record, and his Statement of the Facts contains only a few. Instead, Walker states the following in a footnote at the head of the Statement of the Facts: "The facts contained herein were set forth in Plaintiff's responses to Defendants' motions for summary judgment (R. 195, 883) unless otherwise noted herein. As notated in Appellant's briefing below, the facts are taken primarily from the depositions and exhibits thereto." This citation is highly unorthodox, hardly authoritative, and squarely opposed to the spirit and intent of the Rule.

---

**3.** Kentucky Rules of Civil Procedure.

Counsel's imprecise, all-encompassing citation is troubling, not least because it is not the job of this or any appellate court to scour a vast record to determine whether that record indeed supports a party's assertions. *See Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 53 (Ky.2003); *Dennis v. Fulkerson*, 343 S.W.3d 633, 637 (Ky. App.2011). Indeed, counsel's blanket citation presumes we will scour nearly 170 pages of record for precise citations which CR 76.12 required counsel to provide. While this Court does not shy away from the examination of an extensive record, this is nevertheless a risky presumption on the part of counsel.

More troubling, however, is the inadequacy of the documents and exhibits to which counsel points. In citing to his prior pleadings, counsel essentially cites his own assertions of fact as basis in the record for his Statement of the Case on appeal. Furthermore, the exhibits attached to Walker's responsive pleadings contain only select pages of vital depositions. For example, the entire depositions of Angela Spencer and Michael Brower, along with the wealth of information and context for certain statements they may provide, are not before us on appeal. While this was certainly counsel's prerogative, it places even greater importance upon "ample" citation to those parts of the record that might support Walker's factual assertions and inform his substantive arguments.

CR 76.12(4)(c) grants this Court great discretion over the imposition of sanctions for failure to comply with its provisions. Any sanction "must be commensurate with the harm caused and the severity of the defect, as determined on a case-by-case basis." *Kentucky Farm Bureau Mut. Ins. Co. v. Conley*, 456 S.W.3d 814, 818 (Ky.2015), citing *Ready v. Jamison*, 705 S.W.2d 479, 482 (Ky.1986).

KET contends that we should disregard any arguments for which Walker has not provided proper citation to the record. However, to do so would result in our disregarding nearly all of Walker's argument. Owing to the "importance of hearing cases on the merits and preserving [a party's] constitutional right to appeal[,]" we feel that to disregard Walker's arguments would be imprudent in this case. *Conley* at 818, citing *Ready* at 481–82. Nevertheless, this is not a free pass; it is a warning. Counsel would do well in the future not to presume that this Court will scour such an extensive record in the absence of direct citations which are not only helpful, but mandatory under CR 76.12(4)(c).

We now shift to Walker's substantive claims on appeal which are best addressed as claims arising before 2003, or when the five-year limitations period began for his 2008 suit, and those arising after. Not only did the trial court address these issues in such a manner and in separate judgments, but also the consideration of each set of claims raises different legal questions. Furthermore, we note that the vast majority of reported law on the subject of employment discrimination and retaliation arises from the federal courts. While this Court is under no obligation to conform its jurisprudence to that of the federal courts, it is well-established that the KCRA and Title VII of the federal Civil Rights Act of 1964 are sufficiently similar that Kentucky's courts, when interpreting the former statute, should do so consistently with federal law. *See Meyers v. Chapman Printing*, 840 S.W.2d 814, 821 (Ky.1992).

## II. Walker's Pre–2003 Claims

The trial court held that those claims Walker brought which arose from events in 1989, 1990, and 2001 were barred under the statute of limitations which extended

only to December 2003. It also held that the events occurring prior to Walker's 2002 HRC complaint would also be barred under the doctrine of election of remedies. We address the trial court's conclusions in turn.

## A. KRS 413.120 and the "Continuing Violation" Doctrine

Kentucky law states that actions "upon a liability created by statute," such as the KCRA, "shall be commenced within five (5) years after the cause of action accrued[.]" KRS 413.120(2). An action for discrimination or retaliation accrues on the date the act of discrimination or retaliation occurs. *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002), *superseded in unrelated part by* The Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111–2, 123 Stat. 5 (2009). Hence, strictly applying the limitations period of KRS 413.120(2), Walker's 1989, 1990, and 2001 claims would be barred. However, where a plaintiff can establish that the alleged discriminatory act or series of acts constitutes a "continuing violation," principles of equity allow the limitations period to run anew from each succeeding discriminatory action. *See Ammerman v. Bd. of Educ. of Nicholas Cnty.*, 30 S.W.3d 793, 798 (Ky. 2000).

Walker asserts that KET's multiple decisions between 1989 and 2008 constituted a "continuing violation" and allowed him to bring suit regarding all of those decisions in 2008 without running afoul of the five-year statute of limitations. Put another way, Walker asserts that this consistent pattern of discrimination and retaliation allowed him to "bootstrap" those claims falling outside the limitations period to those falling within it.

Walker cites extensively to *Nat'l RR Passenger Corp. v. Morgan, supra*, even claiming that it overrules the Kentucky

Supreme Court's decision in *Ammerman*. In *Morgan*, a plaintiff brought claims of discrimination, retaliation, and hostile work environment occurring over the course of his tenure with Amtrak. Morgan brought his discrimination and retaliation claims despite the fact that many of the alleged acts occurred outside the limitations period established under Title VII of the Civil Rights Act of 1964. Like Walker in this case, Morgan relied on the "continuing violation" doctrine to argue that it was unreasonable to expect him to know immediately after the earlier incidents that they would go on to form "an ongoing unlawful employment practice." *Morgan*, 536 U.S. at 107, 122 S.Ct. at 2069 (citation omitted). However, in addressing Morgan's claims, the Supreme Court made a deliberate and important distinction in its analysis which greatly affects Walker's argument.

The *Morgan* Court distinguished claims of discrimination and retaliation separately from those of a hostile work environment. It included the former among a category of "discrete acts" which are "easy to identify" and "not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.*, 536 U.S. at 113–114, 122 S.Ct. at 2072–2073. By contrast, hostile work environment claims "occur[ ] over a series of days or perhaps years," making it difficult to say when the "unlawful employment practice" actually occurred. *Id.* at 115, S.Ct. at 2073.

Walker's claims are for discrimination and retaliation. His suit did not include a claim of hostile work environment. Therefore, his reliance on the ruling in *Morgan* as a basis for a "continuing violation" claim is misplaced. *Morgan* expressly rejects the use of the "continuing violation" doctrine in cases claiming "discrete acts such as termination, failure to promote, denial

of transfer, or refusal to hire...." *Id.* at 114, S.Ct. at 2073. Each such event "constitute[d] a separate actionable 'unlawful employment practice.'" *Id.* Furthermore, the Court rejected the use of "serial violations" as the basis for asserting the "continuing violation" doctrine, holding that "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id.* at 112, S.Ct. at 2071.

Walker's allegations of discrimination and retaliation, manifested in the form of a repeated failure to promote, are the "discrete acts" of which the Supreme Court spoke, and he attempts to do that which the *Morgan* Court expressly rejected. Each of the events Walker alleges in his suit, and the alleged harm each event inflicted, was "easy to identify." *Morgan,* 536 U.S. at 114, 122 S.Ct. at 2073. Each was distinct in time and in circumstance. Therefore, each event was subject to the five-year limitations period from the date that it occurred; and those events occurring prior to December 24, 2003, were untimely. The trial court's November 27, 2012 order appropriately granted judgment as a matter of law regarding those events pursuant to KRS 413.120(2); and any issue as to Walker's election of remedies is mooted.

## III. Walker's Timely Claims of Discrimination and Retaliation

Having affirmed the trial court's holding that Walker's 1989, 1990, and 2001 claims were untimely, we turn our attention to his claims arising from events within the limitations period and upon which the trial court granted summary judgment in its May 13, 2014 order. Specifically, we look for genuine issues of material fact remaining in the record regarding Walker's allegation that KET discriminated and retaliated against him by failing to promote him to the positions of Video Supervisor in

2004 and Production Manager in 2005 and 2008.

### A. Proper Legal Standard

■ The parties disagree as to what legal standard is to be applied to Walker's claims. Walker contends that a "mixed-motive" analysis is appropriate, while KET contends that we must employ the long-standing, burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). We agree with KET.

■ In federal law, cases are often classified either as single-motive claims, i.e., when only illegitimate or unlawful motives led to an adverse employment decision, or mixed-motive cases, when both unlawful and lawful reasons motivated the action in question. *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 711 (6th Cir.2006). Under either claim, where a plaintiff initially demonstrates that his race, or some other protected characteristic, was a "motivating part in an employment decision," the burden shifts to the employer to prove an affirmative defense. *Id.* citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989) (plurality opinion). The employer must prove, by a preponderance of the evidence, that it would have made the same decision had it not considered the plaintiff's race. *Id.*

The mixed-motive analysis Walker wishes us to apply is inapplicable. As KET states, Walker has never alleged that legitimate reasons accompanied the alleged discriminatory motives behind KET's decisions concerning him. He has only alleged the latter. Furthermore, Kentucky has not expressly adopted the "mixed-motive" analysis. *Mendez v. Univ. of Ky. Bd. of Trustees,* 357 S.W.3d 534, 541 (Ky.App.2011) (clarifying that the Supreme Court's decision in *Meyers v.*

*Chapman Printing, supra,* merely required a showing that "the discriminatory motive" was a contributing and substantial factor and not that the employer's action was taken solely based on discriminatory motives.). Finally, and perhaps most crucially, the provision in federal law upon which the mixed-motive analysis is based, 42 U.S.C. § 2000e–2(m),[4] has no equivalent in the KCRA. *See Mendez* at 541. For these reasons, as we did in *Mendez,* we elect not to employ a "mixed-motive" analysis. Rather, we agree with KET that the burden-shifting analysis of *McDonnell Douglas* is the law in Kentucky and the appropriate analysis in this case. *See, e.g., Jefferson Cnty. v. Zaring,* 91 S.W.3d 583 (Ky.2002).

▌ In *McDonnell Douglas,* the United States Supreme Court provided the general procedure for addressing claims brought under Title VII and similar statutes like the KCRA: "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a *prima facie* case of racial discrimination.... The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." 411 U.S. at 802, 93 S.Ct. at 1824. If the employer successfully articulates such a reason, he has rebutted the claimant's *prima facie* case, and the claimant "must be afforded a fair opportunity to demonstrate that [the employer's] assigned reason ... was pretext or discriminatory in its application." *McDonnell Douglas,* 411 U.S. at 807, 93 S.Ct. at 1826–1827.

▌ To show a *prima facie* case of discrimination by failure to promote,

a plaintiff generally must demonstrate that: (1) he is a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1020–21 (6th Cir.2000). If the plaintiff does so, the employer must rebut the presumption of discrimination by "proffering a legitimate, nondiscriminatory reason for its decision. The plaintiff then bears the burden of showing that the defendant's proffered reason is pretextual." *Id.* at 1021.

## B. Walker's Remaining Claims of Discrimination

▌ KET's argument on appeal assumes that Walker made a *prima facie* demonstration of discrimination and retaliation. However, before leaving the subject, we are compelled to address the trial court's conclusion that Walker and those KET promoted over him were not "similarly situated." This stems from the aforementioned requirement that, for a plaintiff to establish a *prima facie* case of discrimination, he must first demonstrate, *inter alia,* that "other employees of similar qualifications who were not members of the protected class received promotions." *Dews,* 231 F.3d at 1021.

▌ In this respect, the trial court imposed too stringent a legal burden on Walker. The trial court cites *McBrearty v. Kentucky Cmty. & Technical Coll. Sys.* as requiring Walker to establish that "all of the relevant aspects of their employ-

---

4.   (m) Impermissible consideration of race, color, religion, sex, or national origin in employment practices[:] Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

ment situation were 'nearly identical' to those of the 'similarly situated' employee." 262 S.W.3d 205, 214 (Ky.App.2008). However, this Court's opinion in *McBrearty* applied the *McDonnell Douglas* analysis to claims of disparate treatment and wrongful termination, not a failure to promote. Though the respective analyses for these claims all operate within the *McDonnell Douglas* burden-shifting framework, as a practical matter, proof of a failure to promote claim does not require such a specific, or "onerous," showing of similar situation. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814 (6th Cir.2011), citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651 (6th Cir.2000), and *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir.1998). Rather, a plaintiff must show only that he and those promoted over him "had similar qualifications[.]" *Id.* (citations omitted).

Furthermore, we cannot agree with the trial court that the record definitively established Walker's qualifications to be dissimilar from those of the individuals promoted over him. While it is not enough that a plaintiff and the other successful candidates applied for the same positions or were reviewed by the same hiring authority, *see White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232, 241–42 (6th Cir.2005), Walker has rightly provided more. In the form of resumes and deposition testimony, the record contains evidence that, like those who KET promoted over him, Walker had years of experience in television production, at KET and elsewhere; he had management experience at KET; and he possessed a college degree. Given these facts, we disagree with the trial court that Walker's remaining claims failed this prong of the *McDonnell Douglas* analysis. Walker established a *prima facie* case of discrimination.

Like the trial court, we next turn from the first prong of the *McDonnell Douglas* analysis to its second and third prongs. Specifically, we review the record for genuine issues of material fact remaining as to whether KET articulated "some legitimate nondiscriminatory reason" for not promoting Walker and whether those reasons were pretext for discrimination.

KET's proffered reasons for not promoting Walker in 2004, 2005, and 2008 were many. Its reasoning for hiring Frank Simkonis over Walker as Video Crew Supervisor in 2004 was Simkonis's fifteen years of experience at KET and acclaim as a videographer with supervisory experience. There was also testimony in the record that Simkonis's personality and demeanor were better suited to the position. The trial court found these to be "legitimate and non-discriminatory" reasons for passing over Walker for the 2004 promotion.

Regarding the 2005 hiring of John Breslin as Production Manager instead of Walker, Mike Brower, the individual who interviewed candidates and recommended Breslin, testified that his decision was based, at least in part, on the fact that he had superior computer skills and superior managerial experience as Crew Chief on more "complicated" productions. Additionally, there was testimony that Walker said during his interview that "he had failed as a supervisor in the past" and would decline the job if he thought it was a "glorified secretary's position." The trial court again held that KET met its burden and that Walker failed to raise a genuine issue of fact as to whether KET's reasons were pretext.

KET again passed Walker over for a Production Manager position in 2008. Brower testified that Carl Babcock, the successful candidate, had superior experience at KET as a Production Director and

managerial experience elsewhere. Brower cited Babcock's success managing KET's Frankfort Bureau and its live legislative productions. Brower described Babcock as "the best I got" and as his "right-hand man." The trial court found these to be legitimate and non-pretextual reasons for hiring Babcock instead of Walker in 2008. Overall, the trial court held that Walker's allegations of discrimination and pretext were mere "subjective beliefs of other colleagues" and insufficient to raise any genuine issue of fact as to his 2004, 2005, and 2008 claims. We ultimately agree.

■■■ A plaintiff may establish pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *McDonnell Douglas,* 411 U.S. at 804–805, 93 S.Ct. at 1825–1826. Either can be accomplished by establishing that the employer's stated reason either has no basis in fact, was not the actual reason, or is insufficient to explain the employer's action. *White v. Baxter Healthcare Corp.,* 533 F.3d 381, 393 (6th Cir.2008) (citation omitted).

■■■ On appeal, Walker contends that pretext is evidenced, at least in part, by the deposition testimony of Michael Brower and Angie Spencer. Brower testified to the aforementioned reasons for passing over Walker, as well as to his belief that other employees had complained regarding Walker and that Walker had subpar writing and computer skills. Walker refers to Brower's claims as "vague" and "unsubstantiated." Additionally, Spencer testified that she was unaware of any such complaints about Walker's work while she worked at KET. However, our review of the record, including the limited deposition testimony available, reveals nothing which raises genuine issues regarding whether KET's stated reasons for each employment decision were pretext.

We agree with the trial court that the explanations provided in the record for KET's decisions not to promote Walker have legitimate bases. Meanwhile, Walker has pointed to nothing in the record which tends to show that KET's given reasons lacked sufficient factual basis or were not the real reason it did not promote Walker in each instance. Like Walker, both Frank Simkonis and John Breslin had managerial experience. Though Walker challenges Breslin's non-KET managerial experience, Brower testified that he was looking for any "experience with a fairly large staff." Breslin gained this experience both before and after he joined KET. Overall, the testimony and documentation on record raises no genuine issue or concern that Brower's and KET's proffered reasoning in hiring Simkonis or Breslin were mere pretext. Both men were well qualified.

Regarding the 2008 promotion, Walker points out that KET passed him over for Carl Babcock who did not have a college degree, a requirement for the position. However, Brower testified that years of on-the-job experience could constitute a one-to-one substitute for the stated education requirements. The record reflects that Babcock had four years' experience as a Director at KET and almost twenty years' experience in local news and television production. Additionally, Brower clearly thought highly of Babcock's prior production work and of the value such experience would bring to the Production Manager position. There is nothing in the record to suggest either fact is untrue or disingenuous.

In sum, nothing in the testimony and documentation available in the record raises genuine issues as to the sincerity of KET's stated reasons for its 2004, 2005,

and 2008 hiring decisions concerning Walker. On the contrary, KET has stated legitimate, employment-based reasons for promoting others; and the record provides no material basis for doubting those reasons. Hence, Walker fails to meet his burden under *McDonnell Douglas*, and the trial court correctly granted summary judgment on Walker's remaining claims of discrimination.

### C. Walker's Retaliation Claim

■■■■ To make a *prima facie* showing of retaliation violative of KRS 344.280,[5] a plaintiff must show:

> (1) that [he] engaged in an activity protected by [the Civil Rights Act]; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; (4) that there was a causal connection between the protected activity and the adverse employment action.

*Brooks v. Lexington–Fayette Urban Cnty. Housing Authority*, 132 S.W.3d 790, 803 (Ky.2004), quoting *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991). Walker based his retaliation claim upon the fact that, after his 2002 HRC complaint, KET passed him over for three promotions. On appeal, he claims that summary judgment was improper because genuine issues remained concerning whether KET "blackballed" him after his HRC complaint. We disagree.

The trial court concluded that Walker's claim failed because it did not "present evidence showing but-for causation between the Charge with the HRC and not being promoted to the various positions."

Importantly, the trial court based its conclusion on its assertion that the only evidence Walker presented was inadmissible hearsay. On appeal, Walker does not contest this. Rather, he argues that he met his burden on summary judgment merely by demonstrating that KET passed Walker over three times for less qualified white candidates three times following his HRC complaint. More was necessary.

■■■■ Evidence presented in opposition to a motion for summary judgment must be affirmative and it must be admissible. *See Hubble v. Johnson*, 841 S.W.2d 169, 171 (Ky.1992); *James v. Wilson*, 95 S.W.3d 875, 898 (Ky.App.2002) (" '[e]vidence' necessarily implies evidence that would be admissible at trial."). The deposition testimony of Cindy Thurman and Angie Spencer, who both testified that they had been told that Walker was "blackballed" due to his HRC complaint, is indeed hearsay. Walker's own deposition testimony regarding the alleged retaliation was based solely upon the same hearsay statement Spencer cited which is of no use to Walker in opposing summary judgment.

Walker contends that the evidence he provided was sufficient to move forward because of the United States Supreme Court's "quite broad" definition of "adverse" action as any action which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination[.]" *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006) (citation omitted). However, the adverse and material nature of KET's alleged action is only one element in our analysis. Even assuming KET took an

---

5. KRS 344.280(1) reads, in pertinent part,
   It shall be an unlawful practice for a person, or for two (2) or more persons to conspire: (1) To retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter[.]

adverse and material employment action, federal and Kentucky law also required Walker to provide evidence indicating "a causal connection" between his complaint and KET's subsequent failure to promote him. *Univ. of Texas, Southwestern Med. Ctr. v. Nassar,* — U.S. —, 133 S.Ct. 2517, 2525, 186 L.Ed.2d 503 (2013); *Brooks,* 132 S.W.3d at 803. He has not done so.

The mere fact that KET promoted others instead of Walker is insufficient, by itself, to oppose summary judgment successfully. The absence of evidence of record on this vital element means that genuine issues of material fact as to that element do not exist. The trial court correctly granted judgment as a matter of law on Walker's retaliation claim.

### Conclusion

Walker's discrimination claims fail either due to the applicable statute of limitations or the fact that he failed to present sufficient evidence of pretext under *McDonnell Douglas* to warrant a fact-finder's consideration of those claims. Similarly, we agree with the trial court that Walker's retaliation claim lacks the affirmative and admissible evidence of record necessary to raise genuine issues of fact concerning a causal connection between his HRC complaint and KET's subsequent failure to promote him.

In sum, though for reasons which differ slightly, we agree with the trial court that KET was entitled to judgment as a matter of law on the entirety of Walker's suit. The November 27, 2012 and May 9, 2014 judgments of the Fayette Circuit Court are therefore affirmed.

ALL CONCUR.