RENDERED: SEPTEMBER 25, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1521-MR

DANNY WAUGH, DEBORAH
WAUGH, AND AMANDA WAUGH                                    APPELLANTS


APPEAL FROM BOYD CIRCUIT COURT
v.        HONORABLE BETH LEWIS MAZE, SPECIAL JUDGE
ACTION NO. 15-CI-00539


KEVIN SCOTT FELTY AND KEVIN
SCOTT FELTY, AS NEXT BEST
FRIEND OF J.F., A MINOR                                    APPELLEES


OPINION
AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  GOODWINE, TAYLOR, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Danny Waugh, Deborah Waugh, and Amanda Waugh

(collectively, the Waughs) appeal from the judgment of the Boyd Circuit Court

after a jury trial which found for J.F. (child), through her next friend Kevin Scott

Felty, on her claim for intentional infliction of emotional distress (IIED) and for

Kevin on his fraud claim. The Waughs argue child's IIED claim should not have gone to the jury because there was no expert testimony supporting such a claim and evidence of a claim that was dismissed, tortious interference with custodial rights, was allowed to improperly bolster the IIED claim. They also generally argue that the verdict should be reversed, and the case dismissed. We affirm the fraud verdict but reverse and remand regarding the IIED verdict.

In 2001, Kevin married Amanda. In August 2003, Amanda filed for dissolution and in October 2003, their daughter, J.F., was born. Sometime during the marriage, Amanda's parents, Danny and Deborah, cosigned on a loan for Kevin and Amanda.

During the dissolution process, Amanda, who was initially made the primary custodian of child, repeatedly tried to keep Kevin from having timesharing or tried to restrict his timesharing with child as detailed in *Felty v. Felty*, No. 2005-CA-000674-ME, 2005 WL 3488399, at *1-2 (Ky.App. Dec. 22, 2005) (unpublished). In 2004, Kevin, who was in the national guard, was deployed to Iraq. In February 2005, he requested timesharing while he was on a two-week leave from Iraq and the circuit court granted him timesharing for almost his entire leave with the exchange to be supervised by a deputy sheriff. *Id.* at *2-3. However, Amanda disobeyed this order despite daily attempts by Kevin and the deputy sheriff to pick up the child from her home, and Kevin was never able to

exercise this timesharing.  According to Kevin, they stopped trying to pick up the child when Danny told them that Amanda had left the country.  *Id.* at *3.

In March 2005, the circuit court awarded temporary sole custody to Kevin due to Amanda's failure to abide by the court's order, with custody to be exercised by Kevin's mother while Kevin was deployed.  Amanda did not appear at the show cause hearing, was found to be in contempt, and was ordered jailed with no bond.  Amanda appealed.  Our Court affirmed, noting:

> We observe that Amanda has engaged in obstruction of the court's orders and delaying tactics, including the present appeal, in order to thwart her husband's legal attempts to have a relationship with his child.  Moreover, her arguments on appeal against visitation on the basis that Kevin has had very few visits and is "virtually . . . a stranger" to the child are not well taken, given the fact that Amanda made any sort of visits unworkable.

*Id.* at *3.  The Court found that the appeal was frivolous and "the sole purpose of this appeal was to thwart [Kevin's] legal right to avail himself of the Court's orders."  *Id.* at *4.

In June 2007, findings of fact, conclusions of law, and a decree of dissolution of marriage were entered.  The circuit court adopted many of the findings of the domestic relations commissioner (DRC), including an equal division of the debt owed to Danny and Deborah.  However, the circuit court declined to award joint custody and instead entered additional findings of fact that Amanda attempted to keep child from Kevin, failed to follow court orders

regarding visitation, left the Commonwealth after Kevin was granted custody of child, appealed the order of custody (showing her knowledge of the order) which was affirmed on appeal, failed to appear before the circuit court for a show cause hearing, and failed to act in the best interest of the child. The circuit court awarded Kevin sole custody of child and ordered Amanda to immediately surrender possession of child. The court noted that because Amanda had fled with child and her whereabouts were unknown, it would not order visitation but would consider visitation upon Amanda making a motion and appearing before the court.

Amanda was indicted for custodial interference. In June 2013, police found child hiding in a closet in Deborah's home in Boyd County in the custody of Danny and Deborah, who were then indicted for complicity to custodial interference. It was alleged that Amanda kept child in various locations in Texas and Georgia. Child was returned to Kevin.

On March 30, 2015, Amanda pled guilty to custodial interference, admitting that between February 2005 and June 28, 2013, she kept child from Kevin's legal custody. The Commonwealth recommended that Amanda be sentenced to one year of incarceration, diverted upon completing five years of supervised probation, and no contact with child without approval of the court and child's counselor.[1]

---

[1] Amanda did receive visitation with child later and it appears this visitation is ongoing.

Deborah also pled guilty to complicity to commit custodial interference with the Commonwealth recommending she be sentenced to three years of incarceration, diverted upon completing five years of supervised visitation, and no contact with child without approval of the court and child's counselor. The Commonwealth also reached an agreement with Danny to hold his case in abeyance for two years and then engage in no further prosecution provided he had no contact with child without approval of the court and child's counselor. On May 28, 2015, Amanda and Deborah were both granted pretrial diversion in accordance with these recommendations.

In July 2015, Danny and Deborah filed a complaint against Kevin. They alleged that although the DRC recommended Kevin pay off his half of the loan to them in either twelve or twenty-four payments, he failed to pay the $6,389.40 he owed them.

In Kevin's answer, he admitted not making the payments but argued the amount was not due because of four defenses (unclean hands, laches, knowingly committing a crime, and equitable estoppel). Each defense was based on Danny and Deborah moving away from their home in Kentucky after the DRC's recommendation, to keep child from Kevin's lawful custody knowing Amanda had a pending custodial interference charge.

Kevin also brought two counterclaims against the Waughs, one on his own behalf and another on behalf of child. He alleged the Waughs fled with child out of state in order to defeat his custody and timesharing rights even though Danny and Deborah knew there was a warrant against Amanda for custodial interference, they supported Amanda so she would not have to be employed, the Waughs repeatedly moved to keep him from learning of their address, and they kept child away from Kevin for eight years causing Kevin and child emotional distress. He alleged this constituted extreme and outrageous behavior that subjected him and child to IIED. The father alleged tortious interference with his custodial rights, entitling both to damages, court costs, attorney fees, and expenses. The circuit court granted Kevin permission to join child as a third-party plaintiff and Amanda as a third-party defendant.

The Waughs answered, denying the allegations. They denied ever secreting themselves and argued that Kevin made no effort to find them.

The circuit court permitted Kevin to file an amended complaint in which he added a claim for fraud and requested punitive damages. The Waughs denied his allegations.

After the trial was repeatedly continued, the Waughs filed a motion for summary judgment requesting dismissal of Kevin's claim for IIED and claim for custodial interference and judgment in their favor on the indemnity claim.

Kevin admitted that there was not currently a tort recognized in Kentucky for custodial interference but argued a higher court could recognize such a claim. In June 2018, the circuit court dismissed Kevin's claim for custodial interference but permitted Kevin's and child's claims for IIED to proceed, noting that "some evidence, expert medical or scientific proof, shall be necessary to survive directed verdict," citing *Indiana Insurance Co. v. Demetre*, 527 S.W.3d 12 (Ky. 2017).

The jury trial was held on June 18-21, 2018. Several witnesses were called, including child's therapist, and both sides introduced exhibits. The Waughs moved for a directed verdict on the IIED claims, arguing there was no expert proof to support them and that Kevin should not have been allowed to introduce evidence of the tortious interference claim, which had been dismissed, to support the IIED claims. Specifically, as to child's IIED claim, the Waughs argued that the child's therapist testified that child's distress was not severe, and many things contributed to child's distress, including the stress of integrating into father's family. The circuit court opined that child's situation was similar to that of a medical case in which the wrong leg was amputated and constituted an obvious injury, or that possibly bills and records could constitute scientific proof. Ultimately, the circuit court did not allow Kevin's IIED claim to go to the jury but permitted child's IIED claim to proceed.

After deliberations, the jury found in Kevin's and child's favor. Although the jury found that Kevin failed to pay the loan amount due to Danny and Deborah, it also found that Danny and Deborah engaged in a pattern of unreasonable delay which prevented Kevin from paying the debt as ordered and awarded $0. As to the fraud claim, the jury found that each of the Waughs, by clear and convincing evidence, engaged in a course of conduct which was deceptive and fraudulent and concealed the whereabouts of child from Kevin, violating court orders and preventing him from having his legal right to custody of child. As to the IIED claim for child, the jury found by a preponderance of the evidence that each of the Waughs engaged in a course of outrageous conduct with the intent to inflict emotional distress to child, did inflict intentional emotional distress to child, and child's emotional distress was severe.

The jury awarded Kevin $200,000 on his fraud claim, child $100,000 on her IIED claim, and as to each claim apportioned fault to the third-party defendants. Kevin was also awarded $50,000 in punitive damages on his fraud claim. On each award the jury apportioned 40% responsibility to Amanda, 40% to Deborah, and 20% to Danny. The court awarded these amounts in a September 20, 2018 judgment consistent with the jury's verdict and ordered 6% interest.

Before considering the merits of the appeal, we consider the Waughs' motion, which was passed to the merits panel, to sanction Kevin for his failure to

file an appellate brief.[2]  Pursuant to Kentucky Rules of Civil Procedure (CR) 76.12(8)(c), the Waughs request that we regard the failure of Kevin to file his appellee brief as a confession of error and reverse the judgment without considering the merits of the case under (iii) or reverse the judgment if the Waughs' brief reasonably appears to sustain such action pursuant to (ii).

> Pursuant to CR 76.12(8)(c):
>
> If the appellee's brief has not been filed within the time allowed, the court may:  (i) accept the appellant's statement of the facts and issues as correct; (ii) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (iii) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

The decision as to how to proceed in imposing such penalties is a matter committed to our discretion.  *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky.App. 2007).  Having considered this matter and the particular circumstances of this case, including that Kevin was acting on child's behalf, we choose not to impose a sanction.

We review the evidence supporting the judgment entered upon a jury verdict to determine whether the trial court erred in failing to grant the motion for a directed verdict.  *Lewis v. Bledsoe Surface Min. Co.*, 798 S.W.2d 459, 461 (Ky.

---

[2] Kevin requested additional time to file an appellate brief, which our Court granted.  However, Kevin never filed an appellate brief.

1990). In doing so, we must consider the evidence most favorably toward the prevailing party and refrain from considering the credibility or weight to be given to the evidence. *Id.* We may only reverse the verdict of the jury if "it is so flagrantly against the weight of the evidence as to indicate passion or prejudice." *Denzik v. Denzik*, 197 S.W.3d 108, 110 (Ky. 2006).

The Waughs argue that the circuit court abused its discretion by contradicting itself by holding that expert evidence would be required for Kevin to survive a motion for directed verdict but then allowed child's claim of IIED to go to the jury without this proof. The Waughs argue IIED could not be proven when the evidence established that they acted in what they believed to be child's best interest.

"The elements [of IIED] are: (1) intentional or reckless conduct; (2) that was outrageous or intolerable and offends against the generally accepted standards of decency and morality; (3) which caused emotional distress; and (4) the distress was severe." *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 293-94 (Ky.App. 2009). "A . . . 'severe' emotional injury occurs where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case. Distress that does not significantly affect the plaintiff[']s everyday life or require significant treatment will not suffice." *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012) (citation footnote

omitted). A plaintiff claiming IIED must provide expert medical or scientific proof. *Demetre*, 527 S.W.3d at 39; *Forcht v. Forcht Bank, N.A.*, 533 S.W.3d 695, 704 (Ky.App. 2017) (both interpreting *Osborne*, 399 S.W.3d at 17-18, to apply to IIED rather than just negligent infliction of emotional distress).

The only possible expert witness testimony presented at trial to support child's IIED claim was testimony by the child's therapist, but it appears from the arguments presented that therapist's testimony, while expert, did not provide proof of severe distress. It is not our responsibility to scour the record to see if there are any statements by the therapist which could support the severity of child's distress at being separated from Kevin. *See Walker v. Commonwealth*, 503 S.W.3d 165, 171 (Ky.App. 2016). We will not formulate and advance an argument on Kevin's behalf that child's distress is so obvious that it should not require medical or scientific proof despite the clear statement in *Osborne* requiring such proof. Without such proof, as a matter of law IIED could not be established and a directed verdict on child's IIED claim should have been granted to the Waughs. Therefore, this portion of the jury verdict must be reversed.

The Waughs also argue that the circuit court abused its discretion by allowing evidence of the tortious interference claim into evidence to support child's IIED claim when the tortious interference claim was excluded in its summary judgment order. As we have already concluded that reversal is warranted

on child's IIED claim, we need not additionally address this issue but note that evidence in support of the fraud and IIED claims would naturally have significant overlap with the dismissed tortious interference claim.

Although the Waughs' arguments are focused on child's IIED claim, the Waughs generally argue that the jury's verdict should be reversed, and the case dismissed. Their brief does not provide any basis for reversal of the verdict in Kevin's favor on the fraud claim or the awards of compensatory and punitive damages. Therefore, this part of the judgment must be affirmed.

Accordingly, we affirm the Boyd Circuit Court's judgment in part as to Kevin's fraud claim and reverse and remand in part as to child's IIED claim.

ALL CONCUR.

BRIEF FOR APPELLANTS:                    NO BRIEF FOR APPELLEES

Michael J. Curtis
Ashland, Kentucky