Tammy GRAY; Nicole Johnson and Bridget Feinauer, Appellants

v.

KENTON COUNTY, Kentucky, Appellee.

No. 2013–CA–000145–MR.

Court of Appeals of Kentucky.

Oct. 17, 2014.

Discretionary Review Denied by Supreme Court Sept. 16, 2015.

Eric C. Deters, Independence, KY, for appellant.

Jason V. Reed, Covington, KY, for appellee.

1. Kentucky Revised Statutes.

Before ACREE, Chief Judge; TAYLOR and VANMETER, Judges.

## OPINION

VANMETER, Judge:

Appellants, Tammy Gray, Nicole Johnson, and Bridget Feinauer appeal from the Kenton Circuit Court's order granting Kenton County, Kentucky, summary judgment on appellants' claims alleging sexual harassment under the Kentucky Civil Rights Act. For the following reasons, we affirm.

Appellants were employed with the Kenton County Clerk's office during the tenure of former Chief Deputy Danny Miles, who was hired by then Kenton County Clerk, Rodney Eldridge. Appellants each brought suit in United States District Court claiming sexual harassment under Title VII of the Civil Rights Act. Gray's federal claims were dismissed as time-barred, so she filed this action in the Kenton Circuit Court asserting state law claims of sexual harassment under the Kentucky Civil Rights Act, KRS[1] 344.040 *et seq.* The United States District Court granted summary judgment against Johnson and Feinauer, and they likewise brought suit in state court. All three state law claims were consolidated into the instant action.

Gray was employed with the Kenton County Clerk's office prior to Eldridge's election and the hiring of Miles, and continued to be employed there at all relevant times. Gray alleges that Miles committed each of the following acts: telling Gray that with an erectile dysfunction drug he and she could have fun for hours; when Gray told Miles the computers had been up and down for hours he told her to slowly repeat the phrase "up and down";

Miles told Gray "you can't be the first, but you can be the next"; Miles said to Gray that he could show her a better time than her husband and asked where she spent her free time; and, Miles once touched her leg, although Gray was not sure whether the touch was intentional.

Johnson was a deputy in the Kenton County Clerk's office from May 2008 until she was terminated in November 2008. Johnson asserts she was terminated for refusing the advances of Miles and that Miles created a hostile work environment. She claims Miles harassed her in the following ways: Miles told her she was beautiful, and that he liked her hair and outfits; Miles sat on her desk and folded his legs inappropriately; in a private meeting about proper office attire, Miles told her she was sexy in the outfit she had worn and could do a slide show for him; and Miles also commented that she could not be the first, but she could be the next, referring to sex.

Feinauer was also employed prior to Miles's arrival, and continued to be employed with the Kenton County Clerk's office at all relevant times. She alleged both *quid pro quo* harassment and a hostile work environment. Feinauer claims Miles asked her out on lunch dates and offered to show her a good time. He told her it did not matter that he was married, that his wife was a bitch, and he was unhappy in his marriage. He stroked her hair, described her hair as "soft," and referred to her as "the beautiful Bridget."

Kenton County moved for summary judgment on all sexual harassment claims, conceding that Miles did act inappropriately, and has since been asked to resign, but nonetheless arguing that his conduct did not rise to the level of sexual harassment under the Kentucky Civil Rights Act. The court granted Kenton County's motion for summary judgment, finding that Miles's conduct was not sufficiently severe and pervasive so as to create a hostile work environment. The court also found that as for Gray and Feinauer's *quid pro quo* claims, Gray and Feinauer suffered no tangible adverse employment consequences, and vicarious liability could not be imposed on Eldridge.

On appeal, each appellant argues that the trial court improperly disposed of her *quid pro quo* and/or hostile work environment sexual harassment claims by granting Kenton County summary judgment. All appellants claim their treatment by Miles was severe and pervasive enough to warrant relief for a hostile work environment under the Kentucky Civil Rights Act. Gray and Feinauer claim the trial court erred by finding no genuine issue of material fact as to whether they suffered a tangible adverse employment consequence as a result of Miles's conduct, and by finding that Eldridge was not vicariously liable for Miles's conduct. Lastly, Johnson alleges that the trial court erred by finding that her termination was not a result of her rejection of Miles's advances, and that Eldridge was not motivated to terminate her due to the alleged rejected advances.

CR [2] 56.03 provides that summary judgment is appropriate when no genuine issue of material fact exists and the moving party is therefore entitled to judgment as a matter of law. Summary judgment may be granted when "as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 483 (Ky.1991) (internal quotations omitted). Whether summary judgment is appropriate is a legal question involving no

---

2. Kentucky Rules of Civil Procedure.

factual findings, so a trial court's grant of summary judgment is reviewed *de novo*. *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 370–71 (Ky.2010).

■ "A sexual harassment claim brought under the Kentucky Civil Rights Act ("KCRA") is to be analyzed in the same manner as a claim brought under Title VII, its federal counterpart." *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir.2005) (citing *Ammerman v. Bd. of Educ.*, 30 S.W.3d 793, 797–98 (Ky. 2000)). Title VII and the KCRA prohibit two types of sexual harassment. First, they forbid *quid pro quo* harassment, "which occurs when an employee's submission to unwanted sexual advances becomes either a condition for the receipt of job benefits, or the means to avoid an adverse employment action." *Howington v. Quality Rest. Concepts, LLC*, 298 Fed.Appx. 436, 440 (6th Cir.2008) (citations omitted). Second, "Title VII also 'affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult,' and, to enforce this right, prohibits conduct that creates a 'hostile environment.' " *Id.* (citation omitted). Each appellant argues that her claims of both *quid pro quo* sexual harassment and hostile work environment created by Miles's conduct should not have been dismissed by the trial court's grant of summary judgment.

■ First, we will address all three appellants' arguments that the trial court erred by ruling that Miles's conduct was not severe and pervasive enough to create a hostile work environment.

A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment. To establish a prima facie case of a hostile work environment based on sex, a plaintiff must show that:

(1) she is a member of a protected class,

(2) she was subjected to unwelcome sexual harassment,

(3) the harassment was based on her sex,

(4) the harassment created a hostile work environment, and that

(5) the employer is vicariously liable.

*Clark,* 400 F.3d at 347 (internal citations and quotations omitted).

■ However, the act is not intended to make all offensive conduct actionable.

Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). Whether the harassment is severe and pervasive is determined by a totality of the circumstances test—circumstances including frequency and severity of the conduct, whether the conduct is physically threatening or humiliating, and whether it unreasonably interferes with the employee's work performance. *Id.* at 23, 114 S.Ct. at 371.

We do not believe the trial court erred by finding that as a matter of law, no appellant presented evidence of conduct sufficiently severe and pervasive so as to create a hostile work environment. As the trial court noted, Miles's conduct was inappropriate and offensive. However, the alleged conduct was somewhat mild, infrequent, and nonthreatening. We believe

the trial court properly employed the totality of the circumstances test in analyzing the workplace conditions created by Miles. Even when viewed in the light most favorable to the appellants, we agree that Miles's conduct was not severe enough to create an objectively hostile work environment for any of the appellants.

■■■ Next, we turn to each appellant's argument regarding her claim of *quid pro quo* sexual harassment. A plaintiff may only prevail on a *quid pro quo* claim upon proof of the following:

> 1) that the employee was a member of a protected class; 2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was on the basis of sex; 4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of respondeat superior liability.

*Howington,* 298 Fed.Appx. at 441. The trial court found that each appellant could not, as a matter of law, prove that she suffered a tangible job detriment as a result of Miles's sexual advances. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998).

■■ Gray argues the trial court erred by finding no genuine issue of material fact regarding whether she suffered a tangible adverse employment consequence as a result of her refusing Miles's sexual advances. Yet, Gray remains employed with the Kenton County Clerk's office and could neither prove that her submission to Miles's advances was an express or implied condition for her to receive job benefits, nor that her refusal would cause tangible employment detriment. Because no question of fact exists regarding whether she suffered a tangible adverse employment consequence, the grant of summary judgment properly disposed of Gray's *quid pro quo* harassment claim.

■■ Feinauer also argues that she was a victim of *quid pro quo* harassment, and the trial court erred by finding that her transfer from the Covington Office to the Independence Branch of the Kenton County Clerk's office was not a demotion, and thus no tangible job detriment occurred. We disagree. Feinauer's transfer caused her no loss of pay or benefits, and courts have previously held that such a transfer does not constitute an adverse employment consequence as a matter of law. *See Darnell v. Campbell County Fiscal Court,* 731 F.Supp. 1309, 1313 (E.D.Ky.1990). Feinauer provided no other evidence that she suffered a tangible job detriment in support of her *quid pro quo* harassment claim, and thus, we find no error in the trial court's grant of summary judgment on that claim.

■■ Johnson claims that her *quid pro quo* harassment claim also should not have been dismissed. However, even if we assume that Miles's comments directed towards Johnson could be construed as conditioning Johnson's employment benefits or detriments upon her reaction to them, she has failed to prove that her termination was a result of her refusal of Miles's advances. The fourth prong of the *quid pro quo* test requires not only a tangible job detriment, but also a causal relationship between the plaintiff's refusal of the unwanted advances and the job det-

riment. We agree with the trial court that Johnson is unable to prove a causal connection between Miles's comments and her termination at the hands of Eldridge. Eldridge had no knowledge of Miles's conduct at the time of Johnson's termination, and had no reason to know since Johnson never reported Miles's behavior. Further, Eldridge presented proof of unrelated performance issues leading to Johnson's termination. For these reasons, summary judgment was appropriate.

 All three appellants argue that the trial court should have found the Kenton County Clerk's office vicariously liable for Miles's conduct. We disagree. Even if each appellant had met all of the other elements of a *prima facie* case of *quid pro quo* sexual harassment, none of the appellants reported Miles's behavior to Eldridge. Miles was not a supervisor of any of the appellants—he did not have the power to discipline, suspend, fire or take tangible employment actions against them. *Vance v. Ball State Univ.*, —— U.S. ——, 133 S.Ct. 2434, 2439, 186 L.Ed.2d 565

(2013). When the alleged harasser is not a supervisor, vicarious liability for the employer does not automatically apply. *Ellerth*, 524 U.S. at 762, 118 S.Ct. at 2269. Because Eldridge did not know, nor have reason to know, of Miles's workplace behavior at any relevant time, he cannot be held liable for Miles's actions.

Finally, because we find that the appellants cannot establish a *prima facie* case of sexual harassment, we do not believe it necessary to address the affirmative defense available to employers as set forth in *Ellerth*. *See Ellerth*, 524 U.S. at 765, 118 S.Ct. at 2270.

The Kenton Circuit Court's judgment is affirmed.

ALL CONCUR.