RENDERED:  DECEMBER 11, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1800-MR

LARRY WILSON                                                    APPELLANT

APPEAL FROM SCOTT CIRCUIT COURT
v.        HONORABLE JEREMY MICHAEL MATTOX, JUDGE
ACTION NO. 18-CI-00060

MICHAEL BOSSE; CITY OF
GEORGETOWN, KENTUCKY; AND
MEGAN MILLER                                                   APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, KRAMER, AND MAZE, JUDGES.

KRAMER, JUDGE:  Larry Wilson appeals from an order and judgment of the

Scott Circuit Court summarily dismissing his claims of age discrimination,

retaliation, and hostile work environment against appellees Michael Bosse, Chief

of the Georgetown City Police Department ("GCPD"); City of Georgetown,

Kentucky; and Megan Miller, Director of Human Resources for the City of Georgetown, Kentucky.  We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

Wilson was hired as a police officer by GCPD on or about September 1, 2010.  He was forty-two (42) years old at the time.  In 2012, he became a detective and in 2014, was promoted to the position of sergeant.  He remained a sergeant until his resignation in December 2017.

The record before us shows that in approximately 2016, Wilson began secretly making audio recordings of various interactions with other employees and his superiors.  This was an attempt by Wilson to capture what he alleges was derogatory name-calling regarding his age "[o]n a nearly daily basis"[1] from his colleagues and superiors at GCPD.  On or about April 1, 2016, Wilson sent an email to then-Captain Robert Swanigan stating that he was preparing to file a complaint with the federal Equal Employment Opportunity Commission ("EEOC") "on the never ending harassment and discrimination."

Shortly after notifying Swanigan of his intention to file the EEOC complaint, Wilson received a letter of counseling.  The letter concerned a closed-door meeting in February 2016, when Wilson stated in front of other employees

---

[1] *See* Appellant's brief, page 2.

and his lieutenant that he believed another employee received a "chicken shit" write-up as a disciplinary measure. He filed his EEOC complaint in July 2016.

Wilson faced disciplinary action in November 2016, when he was suspended for two days without pay for failure to follow specific instructions from Miller about treatment for an elbow injury that occurred on the job. On November 30, 2016, Wilson's EEOC complaint was dismissed, and he received notice of a right to sue in federal court. He opted not to bring action in federal court. Wilson received another letter of counseling on May 31, 2017, for leaving the scene of what was eventually charged as an attempted murder and for failure to call GCPD's Criminal Investigation Section ("CIS") to the scene.

In October 2017, Wilson filed a formal grievance with Miller. Bosse responded to the grievance consistent with GCPD policy and procedure. Having received an unsatisfactory result, Wilson appealed the grievance. Miller testified that Wilson's communication and responses given during the appeal made her conclude that she believed Wilson's employment should be terminated. On November 20, 2017, Wilson was presented with multiple disciplinary charges of unsatisfactory service and insubordination and also received a notice of hearing. Wilson retained counsel who negotiated the terms of Wilson's resignation in lieu of termination. Thus, a hearing was not held. Wilson resigned from GCPD on December 8, 2017. He filed a complaint in the Scott Circuit Court on February 12,

2018, alleging a hostile work environment, age discrimination, and retaliation. Discovery ensued, and the appellees herein motioned the circuit court for summary judgment, which was granted. This appeal followed. Further facts will be developed as necessary.

**STANDARD OF REVIEW**

When a trial court grants a motion for summary judgment, the standard of review for the appellate court is *de novo* because only legal issues are involved. *Hallahan v. The Courier Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[2] 56.03. The movants bear the initial burden of demonstrating that there is no genuine issue of material fact in dispute. The party opposing the motion then has the burden to present, "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991). A party responding to a properly supported summary judgment motion cannot merely rest on the allegations in his pleadings.

---

[2] Kentucky Rule of Civil Procedure.

-4-

*Continental Casualty Co. v. Belknap Hardware & Manufacturing Co*., 281 S.W.2d 914 (Ky. 1955). "[S]peculation and supposition are insufficient to justify a submission of a case to the jury, and . . . the question should be taken from the jury when the evidence is so unsatisfactory as to require a resort to surmise and speculation." *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006) (quoting *Chesapeake & Ohio Ry. Co. v. Yates*, 239 S.W.2d 953, 955 (Ky. 1951)).

On appeal, we must consider the evidence of record in the light most favorable to the non-movant (*i.e.*, Wilson) and must further consider whether the circuit court correctly determined that there were no genuine issues of material fact and that the moving parties were entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

## ANALYSIS

## I.  Age Discrimination Claim

Pursuant to KRS[3] 344.040(1)(a), which is part of Kentucky's Civil Rights Act ("KCRA"), and consistent with Title VII of the 1964 Federal Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1), it is unlawful for an employer to "fail or refuse to hire . . . any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, [or] age forty

---

[3] Kentucky Revised Statute.

-5-

(40) and over[.]" The Kentucky Supreme Court has "consistently interpreted the

civil rights provisions of KRS Chapter 344 consistent with the applicable federal

anti-discrimination laws." *See Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492,

495 (Ky. 2005) (citations omitted).

In establishing a discrimination case, a plaintiff must satisfy the

burden-shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct.

1817, 36 L. Ed. 2d 668 (1973). This burden-shifting approach allows a victim of

discrimination to establish a case through inferential and circumstantial proof in

the absence of any direct evidence of discriminatory animus. *Williams*, 184

S.W.3d at 495. Under the *McDonnell Douglas* analysis, Wilson can establish a

*prima facie* case of discrimination by showing: (1) he was a member of a

protected class; (2) he was discharged or suffered an adverse employment action;[4]

(3) he was qualified for the position; and (4) he was replaced by a person outside

---

[4] "An adverse employment action has been defined as 'a materially adverse change in the terms and conditions of [a plaintiff's] employment.' *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc) (citation omitted). A 'bruised ego' or a 'mere inconvenience or an alteration of job responsibilities' is not sufficient to constitute an adverse employment action. *Id.* at 797. Adverse employment actions are typically marked by a 'significant change in employment status,' including 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' *Id.* at 798 (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998))." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010).

of the protected class (here, this would be a person of substantially younger age).[5]

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Only if a plaintiff establishes all four elements of a *prima facie* case does the burden shift to the employer. The employer must then rebut the presumption of discrimination by proffering a legitimate, nondiscriminatory reason for its decision. Thereafter, the burden shifts back to the plaintiff, who then bears the burden of showing, by a preponderance of evidence, that the employer's proffered reason is pretextual and that he is the victim of intentional discrimination. *Walker v. Commonwealth*, 503 S.W.3d 165, 174 (Ky. App. 2016).

Wilson points to three instances in his argument that GCPD discriminated against him based on age.[6] First, he argues he was removed from the Special Response Team ("SRT") in September 2014. We agree with the circuit court that Wilson failed to establish a *prima facie* case of discrimination related to this claim. Wilson was over age 40 when he left the SRT; however, he left voluntarily because he claimed he could no longer afford the necessary tactical equipment. During his absence from SRT, GCPD implemented a change in policy wherein GCPD began to provide tactical gear to SRT members. After being off

---

[5] *Williams*, 184 S.W.3d at 496.

[6] *See* pages 3-4 of Wilson's brief. In the underlying action, Wilson also argued that he was discriminated against when he was denied the opportunity for certain trainings. He does not repeat that argument to this Court.

SRT for nine months to a year, Wilson reapplied. He was told he would need to undergo retraining. Wilson argues that younger employees were treated differently and points to circumstances of another GCPD officer to show that, but for his age, he would have been permitted to rejoin SRT without additional training. Wilson's argument fails. GCPD Officer Valdez also left SRT, but he was permitted to return just thirty-six hours after his departure. The fact that Valdez is substantially younger than Wilson is irrelevant in light of the fact he was off SRT for just a few days while Wilson was away for almost one year. Regardless, Wilson left SRT voluntarily. He therefore fails to establish a *prima facie* case, and our inquiry stops there.

Wilson's second argument is that GCPD twice failed to "promote" him to CIS sergeant as a result of age discrimination. We again agree with the circuit court that Wilson failed to establish a *prima facie* case. This is because the record before us shows that it would not have been a promotion for Wilson, but rather a lateral change within the department. The job title of "sergeant" would have remained the same. Wilson's subjective belief that the position was a promotion has no basis in fact or law. Indicators of a promotion are "increased salary, significantly changed responsibilities, a more distinguished title, or a gain in benefits." *Mitchell v. Vanderbilt University*, 389 F.3d 177, 183 (6th Cir. 2004). Wilson's "subjective impression concerning the desirability of one position over

another generally does not control with respect to the existence of an adverse employment action." *Id.* As the circuit court pointed out, Wilson still had an opportunity for overtime, and there was no change in salary or title. While Wilson claimed the position of CIS sergeant was a more prestigious position, he failed to identify why, other than his subjective belief. Moreover, Wilson did not suffer a loss of prestige or a material change in duties within GCPD by failing to receive a lateral transfer. *See Brooks v. Lexington-Fayette Urban County Housing Authority*, 132 S.W.3d 790, 803 (Ky. 2004) (emphasis added) ("A material modification in duties *and* loss of prestige may rise to the level of adverse action."). Such was not the case when Wilson did not receive the lateral transfer.

Finally, Wilson argues that he was wrongfully terminated in the form of constructive discharge. Wilson argues that he was left with no choice but to resign because it was a "foregone conclusion" he would have been terminated following the hearing scheduled before Georgetown Mayor Tom Prather. We disagree.

"The commonly accepted standard for constructive discharge is whether, based upon objective criteria, the conditions created by the employer's action are so intolerable that a reasonable person would feel compelled to resign." *Northeast Health Management, Inc. v. Cotton*, 56 S.W.3d 440, 445 (Ky. App. 2001) (internal quotation marks and citation omitted). Wilson's attorney at the

-9-

time negotiated the terms of Wilson's resignation. Emails between Wilson's counsel and Andrew Hartley, attorney for the City of Georgetown, demonstrate Wilson's full participation in negotiating the terms of his resignation. Had those terms not been acceptable to either party, Wilson was ready to move forward with the hearing; he had noted his intent to call ten to fifteen witnesses to refute the charges against him. In its order granting summary judgment, the circuit court also noted an audio recording of the resignation meeting in which Wilson stated that he was happy working for Bosse "90% of the time." We agree that this further supports appellees' claim that Wilson's resignation was voluntary.

Wilson failed to establish a *prima facie* case for any of his allegations related to age discrimination. There were no genuine issues of material fact, and the circuit court ruled accordingly. We discern no error.

## II. Retaliation Claim

Wilson claims he was subject to five types of adverse employment actions in retaliation for filing the EEOC complaint: (1) written reprimands; (2) having his unmarked car taken away; (3) suspension for two days without pay; (4) having his authority to make independent criminal charges taken away; and (5) termination/constructive discharge.

The *McDonnell Douglas* scheme is applicable to retaliation claims. A *prima facie* case of retaliation requires a plaintiff to demonstrate: (1) that the

plaintiff engaged in protected activity; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Brooks*, 132 S.W.3d at 803. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the decision. The employee must then show that "but for" the protected activity, the adverse employment action would not have occurred. *Kentucky Center for the Arts v. Handley*, 827 S.W.2d 697, 701 (Ky. App. 1991); *Asbury Univ. v. Powell*, 486 S.W.3d 246, 254 (Ky. 2016).

We agree with the circuit court that Wilson satisfied the first two elements of his *prima facie* case for each alleged instance of retaliation. He threatened to file an EEOC complaint and eventually did so. Bosse and Miller knew of the complaint. However, we also agree with the circuit court that Wilson failed to meet the remaining requirements of his *prima facie* case for each instance of alleged retaliation, although for slightly different reasons than the circuit court.

We first turn to Wilson's assertion that he received written reprimands. In his complaint, Wilson stated that he received a letter of counseling regarding his "chicken shit write-up" comment. This is supported by the record before us. On March 31, 2016, Captain Ronnie L. Wagoner sent a letter to Wilson asking him to explain the comment in writing. On April 7, 2016, Bosse sent what

-11-

was deemed a letter of counseling to Wilson regarding the same incident. Then, on May 30, 2017, Assistant Chief Robert Swanigan sent a letter of counselling to Wilson for leaving the scene of a crime that was eventually charged as an attempted murder without calling CIS.

KRS 15.520(1)(c) defines disciplinary action against a police officer as "termination, demotion, a decrease in pay or grade, suspension without pay, and a written reprimand[.]" In his deposition, Bosse described discipline of police officers thusly:

> A: Well, the Kentucky Revised Statute defines discipline for police officers in the Commonwealth of Kentucky. And the four areas of discipline are written reprimand, a suspension, a demotion, or termination. Those are the only options available to a police agency to invoke punishment on a police officer—discipline on a police officer.
>
> . . . .
>
> A: Okay. The KRS provides that. And when you invoke discipline in an officer if it's an agency-related, policy-related issue that's police-oriented, the police officer's bill of rights kick in and [KRS 15.520] becomes applicable. There is no KRS—or there never has been— and even in the case law that I've read for Kentucky, you're still allowed to correct your people and you're still allowed to counsel your people.
>     And so there is a training element each time you see an issue with an officer that you can sit down and talk to the officer about the issue. That is not discipline. You can even write it down so that you remember what the incident was and that is not discipline. Those are both counseling sessions that are based in training.

-12-

So there's a difference between those two and then the formal process that actually invokes police discipline.

Q: And as far as what goes in the officer's file that you all keep at the Georgetown Police Department, of those things you mentioned, what goes in the officer's file? Like, for example, there's some documents, we may look at some of them, which say something like this will stay in the officer's file for six months or whatever, how does that work?

A: Right. There is a personnel file that is kept in HR. And that is their permanent personnel file. And any time there is formal discipline meted out by the mayor, then that documentation goes into that form.

Anything short of formal discipline stays at the police department. It can stay in the sergeant's file, it can stay in the sergeant's desk, but we keep that—if it's—if it's written down we keep it for a certain period of time to say we're going to be doing follow-up for this period of time on this particular issue.

We reject Wilson's attempt to now characterize the letters of counseling as either a written reprimand under KRS 15.520[7] or an adverse employment action that would qualify as retaliation.

> A "bruised ego" or a "mere inconvenience or an alteration of job responsibilities" is not sufficient to constitute an adverse employment action. Adverse employment actions are typically marked by a "significant change in employment status," including "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."

---

[7] Miller also testified in her deposition that Wilson was not disciplined over the issues he claims.

*Spees*, 617 F.3d at 391 (citations omitted).  We agree with the circuit court that these letters did not rise above the level of mere inconvenience to Wilson.  Accordingly, Wilson failed to establish a *prima facie* case on this claim.

Wilson's second argument is that he was retaliated against when his unmarked police cruiser was changed to a marked cruiser.  Again, Wilson's argument is based on his subjective belief that an unmarked cruiser is more desirable.  We agree with the circuit court's reasoning and incorporate it herein:

> It is Wilson's subjective belief that this is a demotion, but there is no change in pay or title, and no material changes to his job responsibilities.  Without more than a diminution of prestige, the employment action is not adverse.  [GCPD] still provided a patrol vehicle to Wilson.  The markings or lack thereof on the vehicle does [not] classify as adverse in an unlawful retaliation claim
>
> Additionally, even though the timing of the reassignment could be considered suspect—a month after EEOC filing—there is no causal link established.  Even if the reassignment of work vehicles could classify as adverse, Wilson has failed to show that the retaliatory conduct would [not] have occurred "but for" his engaging in protected activity.  Bosse explained that Wilson was randomly selected for reassignment to a marked patrol car[8] to further [GCPD's] objective of increasing visibility of the Department in Georgetown.  Wilson failed to counter the alternative, non-retaliatory purpose for the action.

---

[8] Wilson was among five officers who were randomly selected for reassignment to a marked patrol car.

(Citations omitted.)

Hence, Wilson again failed to meet his burden of establishing a *prima facie* case of retaliation related to reassignment of his patrol car.

Wilson next argues that his two-day suspension was retaliatory in nature. Here, Wilson satisfies the first three prongs of his *prima facie* case. He filed an EEOC complaint; Miller knew of the complaint when she recommended suspension to Mayor Prather; and suspension without pay qualifies as a disciplinary measure and/or an adverse employment action. However, Wilson fails to establish a causal connection between his EEOC complaint and his suspension. The record before us shows that Wilson emailed Miller on November 17, 2016. His email began with "Good Morning[,] I have a quick question or two. I bashed my elbow at work on Tuesday night." He then asks Miller about seeing to his elbow "at the clinic." Miller responded, in part, that "[t]he Balanced Care clinic we spoke about during open enrollment is not for work-related injuries." Miller then gave Wilson very specific and detailed instructions about what to do to address and treat his elbow injury. Wilson responded that he understood. However, Wilson sought treatment of his elbow injury at the Balanced Care Clinic, in direct contravention of Miller's instructions. We agree with the circuit court that there is no evidence whatsoever that Wilson was suspended for any other

reason than violation of Miller's direct instructions. Wilson has again failed to establish a *prima facie* case of retaliation.

Wilson argues that his independent authority to make charges was removed by GCPD as retaliation for his filing of the EEOC complaint. While Wilson lists this allegation, his subsequent argument is scant at best, arguing only that the circuit court viewed the incident "in a vacuum." We are unpersuaded that Wilson's characterization of the incident qualifies as an adverse employment action. The record contains an email from Assistant Chief Robert Swanigan to Wilson dated October 19, 2017, regarding a domestic violence incident that had taken place on North Broadway in Georgetown. Wilson was dissatisfied with the handling of the incident and insisted that the case was an attempted murder rather than misdemeanor assault in the fourth degree. Assistant Chief Swanigan's email states, in relevant part,

> [i]t is clear from your emails that you need further assistance in handling these type situations. There are no two incidents that are exactly alike and our responses do not depend on a cookie cutter mold type match. Each incident is different and each must be evaluated on its own set of circumstances. In order to provide you the appropriate level of assistance in making these decisions and to help you apply agency resources without confusion or frustration we have spoken with Lieutenant Wagoner and will implement a plan to help develop your skills in these areas. Effective immediately, please consult with Lt. Wagoner on crime scenes where you are debating on calling out other agency resources and he will assist you in making these decisions. When other

resources are needed he will provide guidance on the most productive means for doing so. It is our intention that this plan help provide you the skills for making these decisions and the best means for requesting the resources. We will periodically follow up with Lt. Wagoner.

The email does not qualify as discipline under KRS 15.520. Not only is it not a written reprimand, it is even less formal than the letters of counseling which appear in the record on GCPD letterhead. Although Wilson's ego was likely bruised, there was no adverse employment action. Even if the email could be construed as such, Wilson fails to establish a causal connection due, in part, to the passage of time between the filing of his EEOC complaint and the email from Assistant Chief Swanigan.

While there is no hard time frame, the Kentucky Supreme Court has held that four months between the protected activity and the adverse employment action was "too long to create, by itself, an inference of causality." *Brooks*, 132 S.W.3d at 804.[9] More than one year had passed between Wilson's filing of the EEOC complaint and the North Broadway incident. Further, the email from

_____

[9] "In cases where there is no direct evidence of a causal connection, the causal connection of a *prima facie* case of retaliation must be established through circumstantial evidence. *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). Circumstantial evidence of a causal connection is 'evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action.' *Id.* at 566. In most cases, this requires proof that (1) the decision maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and (2) there is a close temporal relationship between the protected activity and the adverse action." *Brooks*, 132 S.W.3d at 804.

-17-

Assistant Chief Swanigan shows that he was addressing *only* Wilson's response at the North Broadway incident in October 2017. Accordingly, Wilson failed to establish a causal connection and failed to establish a *prima facie* case related to this claim.

Finally, Wilson again claims that he was constructively discharged as retaliation. In his argument to this Court, Wilson does not distinguish which facts surrounding his resignation he believes were retaliatory and which were discriminatory based on age. As previously addressed herein, we agree with the circuit court that Wilson was not constructively discharged; we decline to revisit the issue now.

## III.  Hostile Work Environment

Wilson claims that "he was on the receiving end of insults and taunts related to his age (*i.e.*, 'the old man') on a near daily basis."[10] He claims ridicule regarding his age affected him to the point that he experienced stress, lost weight, had trouble eating and sleeping, and dreaded going to work.

Once again, Wilson must demonstrate a *prima facie* case for his claim of a hostile work environment by showing:  (1) he was 40 years or older; (2) he was subjected to harassment, either through words or actions, based on age; (3) the harassment had the effect of unreasonably interfering with his work performance

---

[10] *See* Appellant's brief, page 6.

and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of his employer. *Crawford v. Medina General Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996).

The Kentucky Supreme Court has ruled that "hostile environment discrimination exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ammerman v. Board of Educ. of Nicholas County*, 30 S.W.3d 793, 798 (Ky. 2000) (citation omitted). "Whether the harassment is severe and pervasive is determined by a totality of the circumstances test—circumstances including frequency and severity of the conduct, whether the conduct is physically threatening or humiliating, and whether it unreasonably interferes with the employee's work performance." *Gray v. Kenton County*, 467 S.W.3d 801, 805 (Ky. App. 2014) (citation omitted). The harassment must be both objectively and subjectively offensive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993).

We agree with the circuit court that Wilson failed to establish his *prima facie* case, although for slightly different reasons.[11] Wilson failed to

---

[11] It is well settled that an appellate court may affirm a lower court for any reason supported by the record. *See*, *e.g.*, *Kentucky Farm Bureau Mutual Insurance Co. v. Gray*, 814 S.W.2d 928, 930 (Ky. App. 1991).

establish that he was subject to harassment. He does not dispute that, in over one hundred hours of recorded interaction at GCPD, there are only two instances where a fellow employee referenced his age.[12] The first occurred on or about January 15, 2015, when Wilson was receiving praise from Lieutenant Phil Halley and called a "father figure" to other officers.[13] The second instance occurred on or about February 22, 2016, during a forty-three-minute recorded conversation in which Wilson and other officers were talking about newer graduates. We agree with the circuit court's characterization of the conversation that all officers were engaged in banter – joking and jesting with one another – when someone asked Wilson if he was in graduating class number two (which would have implied that Wilson was much older than his actual age at the time). Wilson was also engaged in the banter among officers. Wilson claims the name-calling occurred on a near daily basis, but the record completely lacks support for his assertion. Wilson failed to submit any affidavits from employees at GCPD, and Officer Ray Brun testified that he did not hear anyone at GCPD refer to Wilson by any derogatory nicknames.

---

[12] We note that Wilson does not point to specific instances in his recordings in the record before us. Appellees, however, point to the two instances discussed herein. If there are other instances contained within the hours of recordings, Wilson does not bring them to our attention. It is not the responsibility of this Court to search the record to find support for Wilson's contentions, assuming it exists. *Smith v. Smith*, 235 S.W.3d 1 (Ky. App. 2006).

[13] The recording is labeled as "Halley Father Figure," so this Court presumes that it is Lieutenant Halley speaking to Wilson in the recording.

*Even if* we construe the comments as harassment as the circuit court ruled, two comments spaced over a year apart do not demonstrate pervasiveness, and the nature of the comments lacks severity. Although Wilson may have been subjectively offended, the comments were not such that an objectively reasonable person would take offense under the circumstances. Therefore, Wilson still fails to satisfy the third element of his *prima facie* case. We agree with the circuit court, who looked to *Crawford* for its reasoning to find that

> [t]he third element is a two-part requirement. The first part is that the plaintiff must show that the harassment unreasonably interfered with his work performance. Wilson claimed that the words upset him and interfered with his job performance. Wilson said he experienced stress, trouble eating and trouble sleeping. He claimed later in his response that he lost over sixty pounds and had two blood transfusions as a result of this harassment. In his complaint, Wilson alleged that the blood transfusion and loss of thirty pounds was the result of the a [sic] two[-]day suspension. Additionally, he claimed that a divorce resulted from the actions of his co-workers and supervisors. Even looking in a light most favorable to Wilson, no evidence, including work or medical records, has been presented to support these claims.
>
> The second part of the third element is that it created an objectively intimidating, hostile, or offensive work environment. This Court looked at the totality of circumstances and considered the frequency and severity, whether it was physically threatening or humiliating, and whether it interfered with his work. Wilson claimed that names were used daily. He has not proven this point; he has hours of recordings and only a few instances of the name calling were caught in the recordings, which

-21-

supports that the name calling was far less frequent than he stated.

(Citations omitted.)

Agreeing with the circuit court on Wilson's failure to meet the third prong of the *prime facie* analysis, we need not address Wilson's argument that he has met the fourth prong.

**CONCLUSION**

The Scott Circuit Court entered a well-reasoned and extremely thorough order granting appellees' motion for summary judgment. Wilson failed to meet his *prima facie* case on each issue he raised, and we discern no genuine issues of material fact for any of his claims. For the foregoing reasons, the judgment of the Scott Circuit Court summarily dismissing Wilson's claims is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Andrew S. Epstein
Louisville, Kentucky

BRIEF FOR APPELLEES:

Charles D. Cole
Janet S. Luo
Lexington, Kentucky