RENDERED: APRIL 21, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0607-MR

ANGEL SMITH                                                              APPELLANT

v.

APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MARY M. SHAW, JUDGE
ACTION NO. 20-CI-005976

METROPOLITAN SEWER DISTRICT                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CETRULO AND ECKERLE, JUDGES.

CETRULO, JUDGE: This an appeal from a Jefferson Circuit Court order granting summary judgment in favor of an employer, and dismissing an employee's claims of gender discrimination, hostile work environment based on gender, and retaliation. Viewing the facts in a light most favorable to the employee, we find she failed to meet her burden on all three claims, and we affirm.

## I.  FACTS & PROCEDURAL BACKGROUND

In 1999, Appellant Angel Smith ("Smith") was hired by Appellee Metropolitan Sewer District ("MSD") as a Utility Worker I Trainee.  She remained employed by MSD as of the filing of this appeal.  During her more than 20 years with MSD, her advancement continued:  after Utility Worker I Trainee, she moved to Utility Worker I, then Utility Worker II, and on to Utility Worker III.  In 2007, she was promoted to Assistant Supervisor (later retitled as a Field Specialist).

> Smith argues that
>
> [f]rom 2005-2017 [she] worked hard and achieved any and all goals set for her within the televisual inspection (TVI) department but was unable to achieve any further promotion.  In fact, Smith watched as she was passed over on at least five (5) different occasions by individuals, male, with less experience, seniority and education than she, some of whom she trained or worked with at the beginning of their careers, were promoted over her within the TVI department.[1]
>
> Conversely, MSD argues that "in the last decade, [Smith's]

supervisors identified [in her evaluations] a need to improve her communication

---

[1] It is unclear from Smith's appellant brief what specific promotions she is contesting.  In 2016, Smith applied for two supervisor positions in the Drainage Department, but the positions were awarded to Val Winburn and Glen Cooper.  In 2017, Smith applied for TVI Supervisor, but the position was awarded to Tony Woods, Jr.  In her Equal Employment Opportunity Commission complaint she contested promotions that were given to Keith Gallai, William Cunningham, and Glenn Eilers.  MSD mentions that she contested a promotion to "Cunningham" and also states in its appellee brief that Smith "applied and interviewed for a few manager-level openings in mid-2021 but was not offered those positions."  However, she did not amend her complaint to include those.

with co-workers, subordinates, and customers." MSD "encouraged" Smith in 2011, 2012, and 2015 reviews to improve her leadership and communication skills by being assertive "without being overly aggressive."

After failing to receive applied-for promotions, Smith filed complaints with her supervisor and with MSD's human resources department alleging she had more seniority than those hired, and that she was passed over due to her gender. In 2016, Smith filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") claiming MSD promoted less qualified men over her. The EEOC investigated and stated it was unable to conclude MSD violated any statutes. Smith contends that her EEOC filing prompted retaliatory conduct by MSD.

In 2017, she was promoted outside the TVI department to "Slip Line" Supervisor in the sanitation/construction department. At that time, she was the only female supervisor in the three field departments (TVI, Drainage, and Sanitary). She has since applied for, but not received, various other promotions. As of the filing of briefs before this Court, Smith remains employed by MSD.

In 2020, Smith filed this underlying action with the Jefferson Circuit Court against MSD alleging gender discrimination, age discrimination, hostile work environment, retaliation, and negligent infliction of emotional distress. After discovery, MSD filed a motion rebutting Smith's claims. In her response, Smith

conceded her age discrimination and negligent infliction of emotional distress claims, but defended the remaining claims. MSD moved for summary judgment, and in April 2022, the Jefferson Circuit Court granted the motion, dismissing Smith's remaining claims of gender discrimination, hostile work environment, and retaliation. Smith appealed. Additional facts will be added within the pertinent sections below.

## II.   STANDARD OF REVIEW

The standard of review upon appeal of an order granting summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing Kentucky Rule of Civil Procedure ("CR") 56.03). Upon a motion for summary judgment, all facts and inferences in the record are viewed in a light most favorable to the non-moving party and "all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citation omitted). "Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01. Summary judgment looks only to questions of law, and thus, we review a trial court's decision to grant summary judgment *de novo*. *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016) (citation omitted); *see also*

-4-

*Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 198 (Ky. 2010).

However, "[a] party opposing a summary judgment motion cannot rely on the hope

that the trier of fact" would simply "disbelieve the movant's denial of a disputed

fact, but must present affirmative evidence in order to defeat a properly supported

motion for summary judgment." *Ryan v. Fast Lane, Inc.*, 360 S.W.3d 787, 790

(Ky. App. 2012) (citing *Steelvest*, 807 S.W.2d at 481).

### III.   ANALYSIS

In determining whether MSD was entitled to judgment as a matter of

law, we apply authority construing the Kentucky Civil Rights Act ("KCRA") as

codified in Kentucky Revised Statute ("KRS") Chapter 344.[2]  Relevant here, the

KCRA prohibits employment discrimination based on one's gender and protects

employees from a hostile work environment.  KRS 344.040.  Further, the KCRA

prohibits retaliation for reporting discrimination or otherwise exercising one's civil

rights under the Act.  KRS 344.280.  However, before analyzing the claims of

gender discrimination, retaliation, and hostile work environment, we must establish

the appropriate timeline.

---

[2] KRS Chapter 344 was modeled after, and is virtually identical to, Title VII of the Civil Rights Act of 1964, codified in 42 United States Code § 2000e-2(b).  *Stewart v. Univ. of Louisville*, 65 S.W.3d 536, 539 (Ky. App. 2001) (citation omitted).  Thus, "[b]ecause of its similarity to federal civil-rights legislation, the KCRA tracks federal case law for guidance on claims based on gender discrimination." *The Bd. of Regents of N. Ky. Univ. v. Weickgenannt*, 485 S.W.3d 299, 306 (Ky. 2016) (citation omitted).

Smith filed the underlying action in October 2020. Her claims partially pointed to promotions that she had applied for prior to October 2015, but which had gone to male MSD employees. MSD argues that "[w]hen an alleged failure to promote based on a discriminatory motive falls outside the KCRA's five-year statute of limitations, the conduct is not actionable." We agree.

Kentucky law states that actions "upon a liability created by statute," such as the KCRA, "shall be commenced within five (5) years after the cause of action accrued[.]" KRS 413.120(2). Moreover,

> [a]n action for discrimination or retaliation accrues on the date the act of discrimination or retaliation occurs. . . . However, where a plaintiff can establish that the alleged discriminatory act or series of acts constitutes a *continuing violation*, principles of equity allow the limitations period to run anew from each succeeding discriminatory action.

*Walker v. Commonwealth*, 503 S.W.3d 165, 172 (Ky. App. 2016) (internal quotation marks and citations omitted) (emphasis added).

Smith contends the continuing violation doctrine allows the Court to consider promotions that occurred more than five years prior to her filing suit, but precedent does not support that contention. "Discrete acts such as termination, [or] *failure to promote* . . . are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice. [The employee] can only file a charge to cover discrete acts that occurred within the appropriate time period." *Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073, 153 L. Ed. 2d 106 (2002) (emphasis added) (internal quotation marks omitted).  Here, Smith's allegation of discrimination and retaliation – manifested in the form of a repeated failure to promote – are "discrete acts" that are "easy to identify."  Therefore, each promotion that Smith applied for, but did not receive, is subject to the five-year limitations period from the date that it occurred.  *See also Walker*, 503 S.W.3d at 172-73.  Thus, promotions prior to October 2015 are not part of our analysis.

### A. Gender Discrimination

The United States Supreme Court established the burden-shifting test reviewing courts employ in discrimination actions against a private employer in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  *Weickgenannt*, 485 S.W.3d at 306.  Applying the *McDonnell Douglas* test here, first, Smith must establish a *prima facie* discrimination action:

> In a failure to promote employment discrimination case, the Sixth Circuit has modified the elements of the [*McDonnell Douglas*] test to fit the specific context. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000).   Under *Nguyen* . . . a plaintiff with a discrimination claim based on a failure to promote must demonstrate that (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.  *Id.* at 562-63.

*White v. Columbus Metro. Hous. Auth.*, 429 F. 3d 232, 240 (6th Cir. 2005).

Smith does so. Smith is female, applied for promotions for which she was qualified, and was denied those promotions, which went to men who were similarly situated (similar experience level and knowledge base).

Next, the burden then shifts to MSD to offer a "legitimate, nondiscriminatory reason" for denying her the promotions. *Id.* at 238 (citation omitted). MSD "identified a need [for Smith] to improve her communication with co-workers, subordinates, and customers." She was encouraged to be "assertive without being overly aggressive" by at least three superiors. Additionally, co-workers gave depositional testimony about situations where they had witnessed Smith treating co-workers disrespectfully and/or was difficult to communicate with.[3] MSD argued that Smith's sometimes aggressive and hostile demeanor toward both subordinates and customers made her a less desirable candidate for the positions at issue.

---

[3] Keith Gallai, during his deposition, testified that Smith responded "aggressively" and "defensive[ly]" when asked about her schedule. He also stated there were "complaints [about Smith] from union staff about the way that she spoke to people; there were complaints from customers." Jermaine Van Lee Murphy described Smith as "on the defense all of the time" and that she was perceived to be "hard to deal with, hard to get along with, hard to gauge, up and down, inconsistent." William Cunningham testified that he witnessed Smith being "outright kind of rude" and "openly yelling, screaming, talking down to [an employee] about some of the work he was performing on her truck." Glenn Eilers testified that communication with Smith was difficult at times, and Smith's subordinates would complain to him about not receiving timely information from Smith about classes.

Lastly, the burden then shifts a final time, back to Smith to be afforded a "fair opportunity" to show that MSD's stated reason for denying her the promotions was "in fact pretext" for discrimination. *Id.* (citation omitted). Smith was afforded such an opportunity but did not meet her burden. Smith argued she had more seniority than the men hired, but MSD stated that seniority was not the central factor in hiring decisions for the non-union positions in question.[4] MSD's Operations Director for Sanitary Sewers testified that Smith was not offered the promotions because "she was not considered to be the best candidate, particularly in terms of interpersonal managerial skills. The applicants who were selected for these positions had all the required credentials, extensive knowledge of operations within their departments, and demonstrated acumen for leadership in managerial roles." A review of the record confirms that Smith was similarly situated to the men who received the promotions, but she did not establish that MSD's rationale for promotions had a discriminatory basis.

Here, Smith established a *prima facie* case of discrimination. MSD rebutted her claim with non-discriminatory rationale for its promotion decisions. In the face of this rebuttal, Smith failed to show that the stated reason MSD presented in support of its decision to choose other candidates over her was a mere

---

[4] Glenn Eilers testified that seniority would "get you in the room" for the interview, but the emphasis on seniority faded after that.

pretext for discrimination. Therefore, the circuit court correctly found Smith did not establish "discriminatory intent . . . on the basis of gender" in MSD's promotion process. Thus, we affirm the circuit court's dismissal of this gender discrimination claim.

### B. Hostile Work Environment

Next, Smith challenges the circuit court's finding that her complaints were not severe, pervasive, or gender specific and therefore not sufficient to maintain a claim of hostile work environment. On appeal, Smith lists the alleged instances of harassment that occurred during her 23 years with MSD:

- Smith was denied help every occasion she requested it.

- Smith was forced to constantly work both her position and that of a field specialist due to MSD's refusal to offer coverage.

- Smith was isolated and ridiculed.

- Smith was referred to as an "angry bitch," "honey," "sweetie," "baby," and "girl" on more than one occasion.

- On at least one occasion a male employee stated publicly that he did "not want that bitch as his supervisor."

- On at least one occasion Smith's supervisor, whom she complained about, stated "I'm not giving that bitch any help."

- On more than one occasion Smith was confronted by males in scary and physically aggressive ways, including her own director.

- Smith was forced to engage in job duties to functions no other supervisor was asked to engage in.

- Smith was micromanaged aggressively about when and how long she needed for restroom breaks even up to and including Smith being asked to keep a log for her supervisor of said breaks.

Smith argues that, taken as a whole, the incidents created an abusive working environment, but as a matter of law, we do not agree. Under KRS 344.040, "it is unlawful for an employer, on the basis of sex, to 'discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment . . . [or] to limit, segregate, or classify employees in any way which would . . . tend to deprive an individual of employment opportunities or otherwise adversely affect status as an employee.'" *Ammerman v. Bd. of Educ. of Nicholas Cnty.*, 30 S.W.3d 793, 797 (Ky. 2000) (quoting KRS 344.040). In other words, the KCRA prohibits sexual harassment in the workplace that creates "a hostile or abusive work environment." *See id.* at 798.

To establish a *prima facie* cause of action predicated upon hostile work environment based on sex, Smith must demonstrate that "(1) she is a member of a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the harassment created a hostile work environment, and that (5) the employer is vicariously liable." *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347-48 (6th Cir. 2005) (citations omitted).

First – as it relates to gender specificity – the lower court found that "there [was] no evidence MSD discriminated on the basis of gender." However,

-11-

on appeal Smith does not make a *gender specific* argument (on this claim) except that one must be *assumed*. Smith argues she was treated differently than other employees, the other employees were similarly situated men, and therefore, discrimination based on gender must have occurred. And yet, correlation does not prove causation. Sexual harassment, to be actionable, needs to be shown to be "based on her sex" with evidence beyond mere inference or assumption. *See Weickgenannt*, 485 S.W.3d at 307-08; *see also Fast Lane, Inc.*, 360 S.W.3d at 790 (requiring affirmative evidence to defeat a properly supported motion for summary judgment).

> The Supreme Court explained in the recent case of *Oncale v. Sundowner Offshore Serv., Inc*., 523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998), that "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex.' We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations." *Id*. at 1002.

*Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000).

Notwithstanding, even if Smith could prove gender specificity, she needed to show that the harassment she received was egregious enough to be actionable. In order for conduct to be actionable, it must be severe or pervasive so as to create an objectively hostile or abusive work environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993).

-12-

Whether the harassment is severe and pervasive is determined by a totality of the circumstances test – circumstances including frequency and severity of the conduct, whether the conduct is physically threatening or humiliating, and whether it unreasonably interferes with the employee's work performance. *Id*. at 23, 114 S. Ct. at 371.

Our Supreme Court defined *hostile work environment* as meaning: "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" *Nat'l R.R. Passenger Corp.*, 536 U.S.at 116, 122 S. Ct. at 2074. *See also Lumpkins ex rel. Lumpkins v. City of Louisville*, 157 S.W.3d 601, 605 (Ky. 2005) ("hostile work environment discrimination must be severe or pervasive and more than episodic"). Moreover, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998) (internal quotation marks and citation omitted). Even viewing the facts in a light most favorable to Smith, we agree with the circuit court that the conduct was not so severe or pervasive as to create an objectively hostile work environment.

Here, Smith argued that she was denied help, but MSD stated that filling in for absent employees was commonplace for her position because certain positions could not "be replaced by interchangeable members of the union workforce." She points to instances where she was called inappropriate names, and while offensive, those names were infrequent and non-threatening. She felt threatened once when a male employee threw his water bottle in anger and walked toward her with fists clenched, but that was an isolated incident, the employee apologized, and Smith reported no further acts of aggression. Also, Smith contends she was micromanaged on her restroom breaks, but the record indicated that she was asked to report when she left a jobsite (to return home to use the restroom) and again when she returned to the jobsite so management could monitor people and trucks during the workday. These incidents are not so severe nor pervasive to be actionable. *See Gray v. Kenton County*, 467 S.W.3d 801 (Ky. App. 2014) (finding a male supervisor's comments to a female employee about his erectile dysfunction medicine, overtly sexual innuendoes and requests, and physical critiques of her clothing and body were not sufficiently severe or pervasive); *see also Morris*, 201 F.3d 784 (finding a male supervisor's dirty jokes, verbal sexual advances, calling a female subordinate "Hot Lips," and commenting on her clothing were not severe enough to create an objectively hostile environment).

-14-

Additionally, Smith contends that "the severe and pervasive nature of the harassment is a fact question for the jury – the trial court's only role is to determine whether facts have been presented not whether the facts are sufficient[,]" citing *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 821 (Ky. 1992). True, "[d]eciding whether the evidence presented proves misconduct 'severe or pervasive' is not a question of law but a question of fact, albeit a question of ultimate fact." *Id.* However, a court has discretion[5] to address the sufficiency of the severe or pervasive claims "if the only reasonable inference from the evidence fails to sustain the claim." *Id.* at 822; *see also Gray*, 467 S.W.3d at 805 ("We do not believe the trial court erred by finding that as a matter of law, no appellant presented evidence of conduct sufficiently severe and pervasive so as to create a hostile work environment.").

Therefore, we do not believe the circuit court erred in finding Smith's claim of hostile work environment insufficient; Smith did not present evidence of conduct sufficiently severe and pervasive to establish a *prima facie* claim of hostile work environment.

---

[5] The holding in *Meyers* discussed judicial discretion as permitted in granting a directed verdict, but we find the analysis helpful here. "[W]e hold that a question of this nature [interpretive function in factfinding as to whether harassment is severe or pervasive] remains essentially a question of fact for the jury; a directed verdict is appropriate if the only reasonable inference from the evidence fails to sustain the claim." *Meyers*, 840 S.W.2d at 822 (citation omitted).

## C. Retaliation

Lastly, the circuit court found that Smith's retaliation claim failed because she could not "establish a causal connection between her protected activity and any retaliatory conduct by MSD." On appeal Smith argues that *circumstantial evidence* is sufficient to establish a causal connection, citing to *Nguyen*, 229 F.3d at 566, but even accepting that low bar, she does not establish the required causal connection. Further dissection of this claim is not necessary as it was so aptly addressed by the lower court, and we incorporate that analysis in this Opinion.

> To establish a *prima facie* case of retaliation, a plaintiff must demonstrate the following: (1) he engaged in activity protected by KRS § 344; (2) the defendant knew she was exercising her protected rights; (3) thereafter, the defendant took an employment action adverse to Plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Mountain Clay, Inc. v. Com., Com'n on Human Rights*, 830 S.W.2d 395, 396 (Ky. App. 1992); *see also Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008). With respect to the last element, the causal connection is established by proving that "(1) the decision-maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and (2) there was a close temporal relationship between the protected activity and the adverse action." *Banker v. Univ. of Louisville Athletic Ass'n, Inc.*, 466 S.W.3d 456, 461 (Ky. 2015). Absent direct evidence of retaliation, the *McDonnell Douglas* framework applies. *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990) (internal citations omitted). The jury uses an objective standard: a reasonable employee must find the challenged action materially adverse. *Burlington N. & Santa Fe* [*Ry.*

*Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006)].

A plaintiff alleging retaliation must adhere to a heightened causation standard as compared to discrimination. She "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). "'But for' causation exists where 'the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Beard v. AAA of Mich.*, 593 F. App'x 447, 451 (6th Cir. 2014) (quoting *Nassar* at 360). However, "the 'but for' test does not require that the jury find discrimination was the exclusive motive for the [adverse employment action], but only that it was an essential ingredient." *Meyers v. Chapman Printing Co.*, 840 S.W.2d 814, 824 (Ky. 1992).

Ms. Smith cannot establish a causal connection between her protected activity and any retaliatory conduct by MSD. Although Ms. Smith's response brief states that she complained to many people about alleged discrimination, she testified during her deposition about only three specific instances of protected activity: (1) making a verbal complaint to MSD's Human Resources Department after Mr. Gallai's[6] promotion; (2) filing her EEOC complaint about the respective promotions of [three male employees] in 2016 and 2017;[7] and (3) discussing her issues with [then-director of MSD].[8] As for how

---

[6] Smith alleges that Keith Gallai was promoted over her, then later as her supervisor, gave her a negative review.

[7] Smith states this EEOC charge was filed "around" June 2017, however MSD states the charge was filed in July 2016. This is relevant because – as MSD argues in its appellee brief – three of the promotions (she complains of) happened before her complaint was filed in July 2016 and could not thereby be the basis of a retaliation claim.

[8] Smith's appellant brief states that in an undated conversation, Smith spoke with the then-director of MSD and stated to him that she felt she was being passed over for promotion in part

-17-

MSD retaliated, she identified "not getting jobs" and "being shoved around," which the Court takes to mean not getting overtime or event pay; not being called for additional shifts; her issues with [filling in for absent subordinates]; and Mr. Gallai's stating she has a bad attitude in his review of her job performance. As for the prior, the temporal proximity of other's promotions and her complaints are tenuous, and, more importantly, there is no evidence that anyone in a position to make decisions on promotions knew of her EEOC complaint or discussion with [the then-director].

The same is true for the latter, there is no evidence that Mr. Gallai knew about any of Ms. Smith's respective complaints. To the extent that the conditions of her employment as Slip Line Supervisor could be considered a position used to retaliate against troublesome employees, there is also no evidence that anyone with authority to take such action knew of her complaints. Instead, the record includes scant evidence about who makes decisions regarding promotions. Some of the deponents participated in the interviewing process but had no decision making authority regarding hiring decisions. In sum, Ms. Smith points to insufficient evidence to make even a tenuous 'but for' connection between her complaints and anything that could be characterized as an adverse action.

We agree. Therefore, we hold that the circuit court did not err in finding Smith did not establish a *prima facie* claim for retaliation.

---

because of her gender. The director told her that "being the only woman in the department will not necessarily give [her] the right to a job position" and that her "attitude" was probably the prohibitive factor.

## IV.  CONCLUSION

Considering the foregoing – and viewing all facts and inferences in the record in a light most favorable to Smith – we AFFIRM the order of the Jefferson Circuit court granting summary judgment in favor of MSD and dismissing Smith's claims of gender discrimination, hostile work environment based on gender, and retaliation.

ALL CONCUR.

BRIEF FOR APPELLANT:

Marilyn "Linsey" Shrewsbury
Eddyville, Kentucky

BRIEF FOR APPELLEE:

Edward L. Lasley
Bradley R. Palmer
Louisville, Kentucky